## EX PARTE ROBERT WILSON.

### No. 1910. Decided November 16, 1898.

**1. Contempt—Judgment For—Jurisdiction on Appeal.**

While there is no question but that courts have authority to punish, in proper cases, for contempt, the power to render the particular judgment rendered by lower courts for a contempt is a matter clearly within the authority and jurisdiction of the appellate court.

**2. Same—Witness—Refusal to Answer Questions Before Grand Jury—Practice.**

Where a witness before a grand jury refuses to answer a question asked him, upon notification of that fact the court may compel him to answer if the question be a proper one, and may fine or commit him to jail until he is willing to testify (article 426, Code of Criminal Procedure), and upon his refusal the court makes the adjudication as to whether he is in contempt or not.

**3. Same.**

Where a witness is brought into court for refusal to answer a question before the grand jury, and states that his refusal was because his answer to the question would tend to criminate him, it is the duty of the court to entertain and consider his objection, notwithstanding what may have occurred previously in the grand jury as to the witness' refusal, and his statements made to said grand jury.

**4. Same.**

Where a witness before the grand jury refused to produce or to state what had become of a certain bill of sale to cattle he and others were charged with the theft of, and his objection was that his answers would tend to incriminate him, Held, he could not be required either to produce or state what had become of it, because, if the bill of sale was fraudulent or forged, it would be a material circumstance against him in the charge of theft; and in a charge of forgery it would also be very important.

**5. Same—Giving Evidence Against Himself.**

There is no difference whether a witness be testifying before a court or a grand jury, he is protected by the constitutional provision which shields him against being compelled to give evidence against himself; and the same protection is applicable when it is sought to require him to surrender his private books or papers.

**6. Same—Void Judgment.**

A judgment is violative of our Bill of Rights, and is illegal and void, which holds a party guilty of contempt and consigns him to custody for refusing to produce a bill of sale, or to answer questions relating thereto, when the bill or his answers would tend to criminate him.

Appeal from the District Court of Milam. Tried below before Hon. W. G. Taliaferro.

Appeal from a judgment on a habeas corpus hearing remanding relator to custody until payment of a fine for contempt in refusing to answer questions as a witness before the grand jury.

The opinion states the case.

*Henderson, Streetman & Freeman,* for relator.—Requiring a witness to disclose evidence to a grand jury which would tend to incriminate and connect him with the commission of a criminal offense is in violation of article 1, section 10, Constitution of Texas, and of amendments to the Constitution of the United States. Const., art. 1, sec. 10; Counselman v. Hitchcock, 142 U. S., 1110.

Holding a witness in contempt by fine and imprisonment for refusing to answer a question that will incriminate him is the exercise of the court's power in a manner and to a degree not sanctioned by law, which is subject to correction by this court. Code Crim. Proc., art. 153; Ex Parte Degener, 30 Texas Crim. App., 566.

They also cited Boyd v. United States, 116 U. S., 616; Rice on Crim. Ev., secs. 203, 205, 207.

*J. C. Scott,* District Attorney, for respondent.

HENDERSON, Judge.—This is an appeal from a proceeding in the court below on writ of habeas corpus, in which the court refused to discharge the applicant, but held him in custody, to collect a fine of $100, which had been imposed on him by the court, and to require him to answer a certain question before the grand jury. From the application and statement of facts it appears that the grand jury of Milam County were investigating a charge of theft of cattle, alleged to have been committed by C. J. Wells, Allen Isaacs, and applicant, Robert Wilson. Appellant was served with a subpoena duces tecum to appear before said grand jury, and produce a certain bill of sale alleged to have been executed by one Dock Simmons to applicant for three head of cattle, charged to have been stolen, and which were alleged to be in his possession. On the first occasion when appellant was before the grand jury, he declined to produce the bill of sale, and the matter was reported to the court, and he assessed a punishment against appellant, but, no commitment having been issued, said proceedings were subsequently set aside, and appellant was brought before the grand jury the second time. For the purposes of this case it is only necessary to state the proceedings had on the last occasion. On the last occasion appellant was brought before the grand

jury under said subpoena duces tecum to produce said bill of sale, and was asked the following question by the district attorney: "Have you got the bill of sale purported to have been executed by one Dock Simmons to three head of cattle, and witnessed by Allen Isaacs?" He answered, "I haven't it on me or about me." Question: "Where is that bill of sale?" The witness refused to answer the question as to what he had done with the bill of sale, stating that he did not refuse to answer the question because said answer would incriminate him. Witness further stated his answer would not incriminate him; at least, this was the report made by the grand jury to the court. When said witness was brought before the judge in open court, he adjudged a fine against said witness of $100; and also that he should be committed to the Milam County jail until he was willing to testify before said grand jury, and give answer to the question propounded to him by said grand jury. The following is the order of the court: "On this day, in open court, was presented the person of one Robert Wilson, and at the same time appeared his attorneys, Henderson, Streetman & Freeman, and appeared also for and on behalf of the grand jury in and for Milam County, then in session, the attorney representing the State, to wit, J. C. Scott, and it being then and there made known to the court that the said Robert Wilson was duly brought before the grand jury of Milam County on this day, and while duly in session and sitting as a grand jury, such witness refused to testify, and refused to answer certain questions asked him by said grand jury, as shown as follows: 'To the Honorable Monte J. Moore, District Judge of the Twentieth Judicial District of Texas: The witness Robert Wilson, who has been legally subpoenaed to appear before the grand jury of Milam County, now in session, with a subpoena duces tecum to produce a certain bill of sale purporting to have been executed by one Dock Simmons to three head of cattle, and witnessed by Allen Isaacs, said subpoena being hereto attached, and the witness being asked: Question. Have you got the bill of sale purporting to have been executed by one Dock Simmons to three head of cattle, and witnessed by Allen Isaacs? Answer. I haven't it on me or about me. Question. Where is that bill of sale? Witness refuses to answer the question as to what he has done with the bill of sale, and he does not refuse to answer the question because said question would incriminate him, and witness further said his answer would not incriminate him. J. C. Scott, Atty. for State.' And it appearing to the court that the question propounded to said witness by said grand jury is a proper one: It is therefore considered, ordered, adjudged, and decreed by the court that said Robert Wilson be fined in the sum of $100, and that he be committed to the Milam County jail until he is willing to testify before said grand jury, and give answer, under oath, to such question so propounded to him by said grand jury; and that the State of Texas do have and recover of and from the said Robert Wilson the sum of $100, and all costs in this behalf; and execution may issue against the property of said defendant, and said defendant, being now present in court, be committed to the custody of the sheriff, who shall forthwith confine him

in the county jail of this, Milam County, and there keep him until he is willing to testify before said grand jury of Milam County, and answer the question herein mentioned." On this order the commitment was issued.

On the 26th of October, relator applied for a writ of habeas corpus, which was granted; the application therefor being as follows: "Your applicant, Robert J. Wilson, respectfully represents and shows: That on the —— day of October, 1898, he was duly summoned to appear before the honorable grand jury of Milam County, Texas, then in session in the city of Cameron, in said county and State, and that in obedience to said subpœna he made his appearance before said grand jury on the 25th day of October, 1898, and that while there he was asked, besides various other questions, the following, to wit: 'Have you got the bill of sale purporting to have been executed by one Dock Simmons to three head of cattle, and witnessed by Allen Isaacs?' to which question this applicant answered as follows: 'I haven't it on me or about me.' The grand jury then asked this applicant the following question: 'Where is that bill of sale?' which question the applicant refused to answer, because his answer to said question would tend to incriminate him, and connect him with penal and criminal offenses against the laws of the State of Texas, to wit, with the offense of the theft of said three head of cattle described in said bill of sale, and with the offense of forging the name of the said Dock Simmons to said bill of sale, by reason of the following facts and circumstances, viz: On or about the —— day of ——, 1898, the three head of cattle described in said bill of sale were seen and known to be within certain inclosed premises jointly owned and controlled by this applicant, Green Wilson, and C. J. Wells, who were then partners in the butcher business in said city of Rockdale, and said premises were then being used by this applicant and said Wells and Wilson as a pasture and place to keep cattle to be used for slaughtering purposes, said premises being situated near the city of Rockdale, in said county of Milam. That after said cattle were seen in said inclosure, to wit, on or about the —— day of ——, 1898, complaint was filed against this applicant and said C. J. Wells and Allen Isaacs in the justice court of precinct No. 4, Milam County, Texas, charging each of them with the theft of said three head of cattle from the possession of M. Cummings. He (applicant) is informed and believes, and upon such information and belief states to the court as a fact, that the State, by her officers, have made certain investigations concerning the execution of said bill of sale, and are now continuing to make an investigation concerning the same, for the purpose of proving, and will attempt to prove, that said bill of sale is false and forged. That the defendant is informed and believes, and charges the fact to be, that when this applicant and the said Wells and Isaacs were arrested upon said charge of theft that it was reported to said State's officers that the cattle had been purchased by this applicant from said Dock Simmons, and that he had executed said bill of sale conveying said cattle, and delivered it to some one of said parties. That this applicant can not

make any further explanation or statement to the court concerning said bill of sale without being exposed to self-incrimination. That afterwards, on the said 25th day of October, 1898, the said grand jury filed a report, signed by the said J. C. Scott, attorney for the State in this court, charging this applicant with refusing 'to answer the question as to what he has done with the bill of sale.' A true copy of said report is hereto attached, marked 'Exhibit A,' and made a part hereof. That this applicant was brought before this court on said charge on the 25th day of October, 1898. That this applicant is and was unlearned in the law, and unacquainted with the procedure and trial of criminal causes in the courts of this State, and for that reason was unable, without the aid of counsel, to bring before and explain to the court the true facts and circumstances concerning his failure to answer said question, and was unable to make said defense to said charge. That this applicant had a valid and legal defense to said charge, to wit, because his answer to said question would tend to incriminate him, and connect him with the commission of said penal offenses against the laws of this State, as before stated. That this applicant did not intend any disrespect or contempt to said grand jury nor to this court by refusing to answer said question. That when this applicant was brought before this court he requested the court to permit him to have his attorneys called to present to this court his defense against said charges, and the court refused said request, and refused to permit this applicant to be defended by counsel against said charge. That afterwards, while this applicant was still before this court, and while said charges were being investigated by the court, this applicant's attorneys, Sam Streetman and J. K. Freeman, appeared in said court, and requested the court to permit them to present to the court the true facts and circumstances concerning the failure of this applicant to answer said question; and the court refused said request, and refused to permit said applicant's said attorneys to make any defense for him against said charges; and the court then and there, upon said charge, made his order fining this applicant $100, and committing him to the jail of Milam County until said fine should be paid, and until this applicant should be willing to answer said question. A true copy of said order is hereto attached, marked 'Exhibit B,' and made a part hereof. That this applicant was immediately thereafter taken to and confined in the Milam County jail. That afterwards, on the same day, the court made some investigation, and permitted this applicant's attorneys and the State's attorney to make some character of statement to him concerning said charge and fine against this applicant, which said investigation was made during the absence of this applicant, and while he was confined in said jail. That during the said investigation the State's attorney, J. C. Scott, stated to the court that he had made certain investigations before the grand jury concerning said bill of sale, and that, if the same was produced and proven, it might be a circumstance against this applicant, tending to convict him of a criminal offense against the laws of this State, and that the said attorney desired said bill of sale for the purpose

of being used in the prosecution against some parties other than this applicant. That on the 26th day of October, 1898, at 1:30 o'clock p. m., the court made its order setting aside the former order fining and imprisoning this applicant, and ordered him to be discharged from custody. A true copy of said order is hereto attached, and marked 'Exhibit C,' and made a part hereof. And afterwards, and before said order was executed, and before this applicant was liberated, the State, by her district attorney, filed in this court an amended report against the applicant, charging him with refusing to answer said question before said grand jury. A true copy of said amended report is hereto attached, marked 'Exhibit D,' and made a part hereof. And this applicant was again brought before this court, and filed his answer to said amended report and charge against him. A true copy of said report is hereto attached, marked 'Exhibit E,' and made a part hereof. That the State appeared by her district attorney, and defendant appeared in person and by his attorneys, and the court proceeded to investigate said charge. That, after hearing the statement of said district attorney and his amended report read, defendant, by his counsel, presented his said answer concerning his failure to answer said question before said grand jury, and, the court having heard the evidence introduced by both parties, again made his order fining this applicant the sum of $100, and imprisoning him in the said jail of Milam County until this applicant should be willing to answer said question before said grand jury. A true copy of said order is hereto attached, marked 'Exhibit F,' and made a part hereof. That in obedience and pursuance to said order of the court the clerk of said court issued a writ of commitment, commanding the sheriff of said county to take into his custody and commit to jail of said county this applicant until he should pay said fine, and until he should have answered said question so propounded by said grand jury. A true copy of said writ of commitment is hereto attached, marked 'Exhibit C,' and made a part hereof. The said writ of commitment was duly delivered to R. Todd, sheriff of said county, and in obedience to its mandate the said R. Todd confined this applicant in said jail of Milam County, and that this applicant, Robert Wilson, is now illegally confined in said jail, and restrained of his liberty, by said R. Todd, sheriff of said county of Milam, by virtue of said order of said court, and by virtue of said writ of commitment. Wherefore I pray your honor to grant and issue a writ of habeas corpus to have me forthwith before your honor, to the end that I may be discharged from such illegal confinement and restraint." Which application was signed and sworn to by said Robert Wilson.

On the trial the copies of the judgment of contempt and writ of commitment were introduced, and, in addition thereto, the following testimony was introduced: "J. C. Scott, the acting district attorney for the Twelfth Judicial District of Texas, witness for the applicant, duly sworn, testified: 'On October 25, 1898, Robert Wilson, applicant, appeared before the grand jury of Milam County in obedience to a subpoena, and while before said grand jury

stated that he did not have on his person the bill of sale purporting to have been executed by Dock Simmons to three cattle, and witnessed by Allen Isaacs, and the defendant was then asked by the said grand jury where the said bill of sale was, which question the defendant refused to answer, and did not state to the grand jury that his answer to said question would not incriminate him. That during the summer of 1898 two of the said cattle described in said bill of sale were found butchered in a little pasture near C. J. Wells' house, and under his control, about three and one-half miles from Rockdale, in Milam County, Texas. One of the cattle not butchered was also found in said pasture. The defendant and Wells and Green Wilson were then and there partners in the butcher business, and said Wells used said pasture as a pasture. That after said cattle were found in said inclosure, a joint complaint was filed against applicant and said C. J. Wells and said Allen Isaacs for the theft of said cattle from M. K. Cummings; and that, when said Isaacs was arrested for the theft of said cattle, he gave as an explanation of their connection and possession of said cattle that the applicant had bought them from said Dock Simmons; and that said applicant and said Wells and Isaacs are now under bond for their appearance before this court upon the charge of theft of said cattle. That the said district attorney and grand jury have investigated the facts concerning the execution of said bill of sale at the present term of this court, and that the district attorney claims that said bill of sale is false and forged, and that the production of said bill of sale and defendant's answers to questions concerning same, and his answer to the question he refused to answer, might or might not incriminate him, and connect him with the commission of certain criminal offenses against the laws of this State.' The defendant, being duly sworn, testified as follows: 'That the production of said bill of sale, and his answers to questions concerning same, and his answer to the question he refused to answer, to wit, "Where is that bill of sale?" would tend to criminate him, and connect him with the commission of a criminal offense against the laws of the State, to wit, the theft of cattle and forgery; and for said reason, and no other, the defendant refused to answer said question before said grand jury. That if it be true that the applicant stated to the grand jury that he did not refuse to answer said question for the reason that it would not incriminate him, and if he stated that his answer to said question would not incriminate him, the same were made under a misapprehension of the facts and the effect of said question and answer, and by inadvertence and mistake. That the defendant did not refuse to answer said question out of any disrespect of the grand jury or of this court.' " Thereupon the court refused to discharge said applicant, but remanded him to the custody of the sheriff, from which order he prosecutes this appeal.

The question presented for our consideration is, did the court have jurisdiction to adjudicate that appellant was in contempt of court by refusing to answer a question propounded to him by the grand jury, or for refusing to produce the bill of sale alleged to be in his possession? There

is no question but that courts have authority to punish in proper cases of contempt; but the question here is, did the court have the power to render the particular judgment it did? For if the court undertook to compel the applicant to produce a paper or to answer a question which might tend to incriminate him in a penal offense, and to make his refusal to answer an offense against the authority and dignity of the court, and to punish him as for a contempt, then its action was null and void. The power of an appellate court in a question of this character was thoroughly reviewed in the case of Ex Parte Degener, 30 Texas Criminal Appeals, 566. And it is only necessary here to refer to that case as our authority to act in a matter of this character. It is insisted by the State that, although the question may have been an improper one, and not authorized under our Constitution, yet it was a personal privilege, and by the acts and conduct of applicant before the grand jury he waived this privilege; that is, he there stated that his answer would not tend to criminate him. We think this view originates in a misapprehension of our statute on the subject of the examination of witnesses before grand juries. The grand jury had no authority itself to punish the witness for contempt. It could only refer the matter to the district judge. Article 426, Code of Criminal Procedure, provides as follows: "When a witness brought in any manner before the grand jury refuses to testify, such fact shall be made known to the attorney representing the State or to the court; and the court may compel the witness to answer the question if it appears to be a proper one, by imposing a fine not exceeding $100, and by committing the party to jail until he is willing to testify." From this it will be seen that when the witness refuses to testify he is brought before the judge, as was done in this case; and it is then the duty of the judge to determine, from the nature of the question and the surroundings, whether or not the answer of the witness will tend to incriminate him. But the decision of the judge is not conclusive. The witness is the final arbiter of this question, as he alone can know whether the answer will tend to criminate him. We do not mean to say that he is the judge of this matter, but on his refusal the court makes the adjudication as to whether he is in contempt or not. Ex Parte Park, 37 Texas Crim. Rep., 590. In this case applicant was brought before the court, and, no matter what may have occurred before the grand jury, when he then informed the court that he declined to answer the question or produce the bill of sale, because his answer or the production of said bill of sale would tend to criminate him, it was the duty of the court to entertain his objection.

Did the applicant have the right to refuse to state to the grand jury or the court where said bill of sale could be found, or to refuse to produce the same? This involves the simple question whether or not the bill of sale would tend to criminate him, either in the offense which the grand jury were investigating, of theft of said three head of cattle, or in a charge of forgery of said bill of sale. Obviously, if the alleged bill of sale was fraudulent or forged, it would be a very material circumstance against him in the charge of theft of cattle, and in a charge of forgery

it would also be very important. After applicant declined to produce the same, stating as his ground therefor the fact that it would tend to criminate him, we are at a loss to understand upon what hypothesis the court required him to answer. In the nature of things, there could be no difference between his testifying before the grand jury or before the court. Our Constitution provides: "In all criminal prosecutions, the accused shall not be compelled to give evidence against himself." Bill of Rights, sec. 10. And this was as much a criminal prosecution when entertained before the grand jury as if it had been before the court. This question was thoroughly discussed, and the authorities reviewed, in Counselman v. Hitchcock, 142 U. S. 547, 12 Supreme Court, 195, and we refer to that decision, and the authorities there cited. The same principle that protects a party against being compelled to give in oral testimony incriminating himself is also applicable when it is sought to require him to surrender any of his private books or papers. See Boyd v. United States, 116 U. S., 616, 6 Sup. Ct. 524. We quote from that case as follows: "Any compulsory discovery by extorting the party's oath or compelling the production of his private books and papers to convict him of crime, or to forfeit his property, is contrary to the principles of a free government. It is abhorrent to the instincts of an Englishman; it is abhorrent to the instincts of an American. It may suit the purposes of despotic power, but it can not abide the pure atmosphere of political liberty and personal freedom." It is held in a majority of the cases that, if the testimony merely furnishes a link in a chain of evidence that may convict him, or tend to convict him, the witness is protected by his constitutional privilege. But in this case there can be no pretense that the bill of sale was not material testimony; it was palpably so; and we are surprised that it did not occur to the judge at once that it was beyond his power to compel its production when the witness stated to him that it would tend to criminate him.

In this particular the fundamental law of the land—our Bill of Rights —was the safeguard under which the applicant rested his claim of immunity from answering the question; and it afforded a shield which no exigency of the prosecution or desire for ferreting out crime would justify a court in disregarding. To have compelled an answer of the witness, as was sought in this case, was not only to strike down section 10 of our Bill of Rights, protecting citizens from being compelled to give evidence against themselves, but it was also in violation of another provision, which protects citizens against unreasonable seizures and searches. If the defendant had been on trial before a petit jury, the judge would have been no more authorized to have compelled him to produce the bill of sale as evidence against himself than he would have been authorized to require him to take the stand and testify as to the contents of the bill of sale. And we apprehend it will not be contended that he could be placed on the stand, and have been compelled to disclose the whereabouts or contents of the bill of sale. These sections were placed in our Bill of

Rights for the purpose of protecting the citizen. Similar clauses are to be found in the Constitution of the United States and all of the States of the Union. The principle goes back to the early days of English jurisprudence, to the star chamber inquisitions, and to the time of John Wilkes, when Lord Camden, in Entick v. Carrington, 19 How. St. Tr., 1029, planted firmly the principles of liberty regulating and restraining the inquisitorial powers of courts, which has ever since been the rule of law among all English-speaking peoples. And in this day neither the Legislature nor courts are authorized to violate these sacred provisions of our Constitution. We therefore hold that the judgment of the lower court remanding the applicant to custody for refusing to produce said bill of sale, or to answer questions relating thereto, was violative of our Bill of Rights, and was illegal and void. The judgment is accordingly reversed, and the relator is ordered to be discharged from custody.

*Reversed and relator discharged.*

HURT, Presiding Judge, absent.