177  185
180  137
177  185
184  554
177    185
189   ²183
189   ³183

ELIJAH M. EGGERS

v.

I. C. FOX.

Opinion filed December 21, 1898.

1. ELECTIONS—general rules of evidence prevail in election contests. The general rules of evidence as to the testimony and privileges of witnesses prevail in election contests.

2. SAME—privilege of refusing to testify for whom witness voted is personal. A witness cannot be compelled, on contest, to tell for whom he voted; but the privilege is a personal one, and if not claimed by him it is error to sustain counsel's objection based thereon.

3. SAME—witness not claiming privilege is bound to testify. Where a witness in an election contest refuses to testify as to whether he voted, but states that he has no particular reasons for refusing, the court should compel him to testify; and neither the court nor counsel can claim his privilege for him.

4. SAME—when affidavit of witness as to his vote is admissible. An affidavit by a voter, made three days after election, to the effect that he had inadvertently voted twice, voting the same ticket each time and marking both alike, is admissible on contest, where the voter has refused to testify but has not claimed his privilege.

5. SAME—when ballots lose their value as evidence to impeach poll-books. Judges of election who for any reason are unable to deliver the ballots and poll-books to the proper custodian after the votes are counted and the result declared must keep them in their possession until such delivery can be made, or the ballots will lose their value as evidence to impeach the result shown by the poll-books, unless it is proved they were not tampered with before delivery.

6. SAME—when ballots are not properly preserved. Ballots strung on a wire and placed in the ballot-box, which is tied with cord and locked in the town hall by the town clerk, who carried one key, others being in the possession of other parties, from Tuesday night until Thursday, when they were sealed up by the judges and formally delivered to the clerk, are not properly preserved, and evidence that they were not tampered with is necessary before they can be used to impeach the poll-books.

APPEAL from the County Court of Fulton county; the Hon. S. H. ARMSTRONG, Judge, presiding.

This was a petition brought by Elijah M. Eggers in the county court of Fulton county, against I. C. Fox, to

contest his election to the office of town clerk of Young Hickory township at the annual town election held April 5, 1898.    It is alleged in the petition that appellant was an elector in the town of Young Hickory on April 5, 1898; that an election was held on that day in said town for town clerk and other town officers; that the polls were opened according to law; that ballots were received at said election for the office of town clerk and other town officers; that after the polls were closed a count was made by the judges of election of the votes cast for town clerk and other town officers and a certificate made; that at said election appellant was the democratic candidate and I. C. Fox, appellee, was the republican candidate for the office of town clerk aforesaid; that Fox received 128 votes and Eggers 126 votes for such office of town clerk, as the result was declared by said judges; that Fox was declared elected, received a certificate of election, qualified and entered into the possession of said office; that at said election one James Reid voted twice, and each time, by properly marking his ballot with a cross within the circle at the head of the republican ticket, voted the straight republican ticket; that the judges of said election counted both of the ballots so cast by said Reid for said Fox when neither of said ballots should have been counted for any one; that one ballot improperly marked and that should not have been counted for any one was by said judges counted for Fox; that votes were cast by illegal voters for Fox and counted for him; that appellant received the majority of the legal votes cast at said election for the office of town clerk aforesaid.    The petitioner prayed for a re-count of said ballots, and that he may be declared and adjudged lawfully elected town clerk and duly installed in said office and said Fox be ousted therefrom.

The defendant put in an answer, in which he alleged that he was duly elected town clerk and denied the material allegations of the petition.    To the answer petitioner filed a replication, and on a hearing before the court on

the pleadings and evidence an order was entered dismissing the petition. To reverse the judgment of the county court the petitioner appealed.

HARRY M. WAGGONER, and MARVIN T. ROBISON, for appellant:

A mark on a ballot which bears no resemblance to a cross, and is not an attempt to make a cross of any kind, will not permit the ballot to be counted. *Parker* v. *Orr*, 158 Ill. 614.

A witness must testify unless he informs the court, upon oath, that he cannot testify without criminating himself. *Chamberlain* v. *Willson*, 12 Vt. 491.

A privilege from answering questions on the ground that they tend to criminate the witness is the personal privilege of the witness. *State* v. *Wentworth*, 65 Me. 234.

The privilege belongs exclusively to the witness, who may take advantage of it or not, at his pleasure. The witness may waive it and testify, in spite of any objections coming from the party or his counsel. *Cloyes* v. *Thayer*, 3 Hill, 564.

If a man votes twice at an election when only entitled to vote once, both votes must be rejected,—and this, irrespective of the question whether such acts were done intentionally, ignorantly or by mistake. *Behrensmeyer* v. *Kreitz*, 135 Ill. 596.

CHIPERFIELD, GRANT & CHIPERFIELD, for appellee:

Before a re-count of the ballots should be allowed to impeach the returns it should be proved satisfactorily that the boxes have been kept so that there has been no opportunity for tampering with the ballots. *Butler* v. *Lehman*, 2 Cong. El. Cas. 353; *Cook* v. *Cutts*, 6 id. 252; *Davis* v. *Murphy*, L. & R. (Mass. El. Cas.) 172; *Powell* v. *Holman*, 6 S. W. Rep. 505.

The count made at the closing of the polls, before it is known how many ballots must be changed to affect the

vote, is better evidence than any subsequent re-count of
the ballots, unless it be shown affirmatively that the bal-
lots have been properly handled, preserved, sealed up·
and continually in the possession of the custodians of
the law, and no opportunity has been given for tamper-
ing with them.   Cooley's Const. Lim. (1st ed.) 625; *People
v. Burden,* 45 Cal. 241; *Hudson* v. *Solomon,* 19 Kan. 177; Mc-
Crary on Elections, (2d ed.) 249; *Kingery* v. *Berry,* 94 Ill. 520.

The declarations of a person made some time after
having voted at an election, admitting or stating facts
showing he was not a legal voter, are inadmissible as
evidence showing his disqualification.   *Kreitz* v. *Behrens-
meyer,* 125 Ill. 196; 135 id. 623; *Beardstown* v. *Virginia,* 76
id. 81; 81 id. 541.

A witness cannot be compelled to answer questions
which would show his vote to be illegal.   *Second Illches-
ter case,* 2 Peckw. (Eng. El. Cas.) 251.

A legal voter cannot be compelled to testify for whom
he voted.   *Easton* v. *Scott,* 1 Cong. El. Cas. 272; *Respublica*
v. *Rea,* 3 Yates, 66; *Palmer* v. *Howe,* L. & R. (Mass. El. Cas.)
145; *People* v. *Cicott,* 16 Mich. 283; *People* v. *Pease,* 27 N. Y. 81.

And this is true where the right to vote is merely
doubtful.   *McDaniel's case,* Brightly's El. Cas. 248; *Locust
Wood Election,* 4 Pa. L. J. 349; *State* v. *Hilmantel,* 23 Wis. 422.

Mr. JUSTICE CRAIG delivered the opinion of the court:

On the hearing in the county court what purported to
be the ballots cast at the election, the poll-books, tally
list and the certificate of the judges of election were read
in evidence.   The certificate of the judges of election
showed that E. M. Eggers received 126 votes and I. C. Fox
128 votes for town clerk, and that said Fox was declared
elected.   The tally list showed 126 votes cast for Eggers
and 128 for Fox.

The poll-book showed J. M. C. Collard as voter No. 48
on the list of voters.   Collard was called as a witness and
testified: "I voted at the election held in Young Hickory

township, Fulton county, Illinois, on the 5th day of April, 1898. Had lived in Young Hickory township from February 18 prior to the 5th day of April, 1898. Prior to that time I lived in Knox county. I moved from Knox county to Fulton county February 18, 1898." The witness was then asked, "What ticket did you vote?" The question was objected to and the objection sustained. Thereupon the following question was asked: "For whom did you vote for town clerk on the 5th day of April, 1898, at London Mills?" The question being objected to, the objection was sustained. Counsel for petitioner then asked the witness the following question: "Have you any objections to answering for whom you voted for town clerk on the 5th of April, 1898?" and he answered, "I don't know as I have."

The general rules of evidence as to the competency of witnesses and the privileges of exemption from testifying prevail in election cases as in suits between private parties. (6 Am. & Eng. Ency. of Law, 422.) The law is also well settled that where the answer of a witness will expose him to a penal liability, or to any kind of punishment, or to a criminal charge, he is not bound to answer. (1 Greenleaf on Evidence, sec. 451.) In the authorities cited in the note in volume 6, page 422, *supra*, it is laid down that a legal voter cannot be compelled to testify for whom he voted, but it is also laid down that the exemption is a personal privilege, and the testimony will be received if the voter sees fit to give it. Here the witness did not claim his privilege and did not refuse to testify, and we are of the opinion that neither party to the action had the right to claim it for him. Moreover, Collard had not resided in Fulton county ninety days next before the election, and was not a legal voter. In addition to this, the witness had already testified that he had voted and that he had only resided in Fulton county from the 18th day of February, 1898,—fifty-six days before the election. He had therefore voluntarily exposed

his unlawful act, and the answer to the question whom he voted for would neither detract from nor add to the force and effect of the evidence he had already given. We think the court erred in sustaining the objections to the questions.

James Reid was called as a witness, and testified that he resided in Young Hickory township. The following question was then asked: "Did you vote at the election held in and for the town of Young Hickory on the 5th of April, 1898?" The court stated that he need not answer, to which ruling plaintiff, by his counsel, then and there excepted. Witness then said, "I decline to testify." He was then asked, "For what reason?" and said, "I have no particular reason." If the witness had no reason for refusing to testify in answer to the question propounded it was the duty of the court to compel him to answer. The witness did not claim a personal privilege, and neither the court nor the opposite party had the right to claim it for him. (29 Am. & Eng. Ency. of Law, 843.) The poll-books which were in evidence show Reid twice as a voter at the election in question. He was numbered in the list of voters first as No. 103 and second as No. 195, and it was claimed by the contestant that Reid had voted twice for the defendant and that both ballots were counted for the defendant. If the claim so made was true and appellant was able to establish it, he had the right to do so by any and all legal evidence he saw proper to produce. When Reid was asked if he voted at the election, the court had the undoubted right to advise the witness that he was not required to give any evidence which would criminate him, but after that was done the witness should have been left free to waive his privilege and testify, if he saw proper. It was neither the duty nor the right of the court to say or do anything which might prevent the witness from testifying if he saw proper. (*Fries* v. *Brugler*, 7 Halst. 79.) Three days after the election Reid made the following affidavit:

"STATE OF ILLINOIS,  }
 *Fulton County.* } ss.

"James Reid, being duly sworn, on oath says: I attended the election for the town officers of Young Hickory township, held at London Mills in said town on April 5, A. D. 1898, and unthoughtedly voted twice at said election, and both times I voted the straight republican ticket, and each time I marked a cross (x) within the circle at the head of the republican ticket.

JAMES REID."

After the court ruled that Reid could not testify in the case, the appellant offered his affidavit in evidence, but it was excluded by the court. The affidavit was not offered for the purpose of showing that Reid was not a legal voter in the town on the day of election, but the sworn statement was offered for the purpose of showing that Reid had voted twice at the election, and on account of having voted twice both ballots should be rejected.

When and under what circumstances the declaration of a voter may be received when offered for the purpose of impeaching his vote is a question upon which the authorities are not harmonious. In 6 American and English Encyclopedia of Law (p. 429) the author says: "In England the weight of authority has been in favor of receiving the declarations of voters against their right to vote, although the earlier cases were in conflict. In this country the congressional cases are somewhat in conflict, although the weight of authorities seems to be in favor of admitting the declaration; and in the courts the authorities are also in conflict." The author also says: "The authorities are not uniform as to whether declarations made after the election by the voters as to how they had voted can be admitted, but where made at the time of the election they have been admitted as a part of the *res gestæ.*" Here the declaration embodied in a sworn statement was made only three days after the election, and there is nothing to indicate that it was made for the purpose of aiding either of the contesting parties, nor does it appear that any undue means were resorted to

to procure the statement. In *State* v. *Olin*, 23 Wis. 309, it was held that when a person who had voted refused to testify to his qualification, his declaration that he was not naturalized should be admitted. The same principle was announced in *People* v. *Pease*, 27 N. Y. 45. Under the rule indicated in the cases cited, we are inclined to hold that after Reid refused to testify to any act which tended to show his vote was illegal, his sworn declaration, made three days after he voted, was admissible.

It is also claimed in the argument that the court erred in refusing to consider the ballots and reject one counted for appellee which was marked with a circle within the circle at the head of the republican ticket. Section 59 of chapter 46 of the Election law (Hurd's Stat. 1889, p. 613,) provides: "All the ballots counted by the judges of election shall, after being read, be strung upon a strong thread or twine in the order in which they have been read, and shall then be carefully enveloped and sealed up by the judges, who shall direct the same to the officer to whom by law they are required to return the poll-books, and shall be delivered, together with the poll-books, to such officer, who shall carefully preserve said ballots for six months, and at the expiration of that time shall destroy them by burning without the package being previously opened." If the course indicated by the statute had been followed by the judges of election in disposing of the ballots, then appellant would have been entitled to have the ballot objected to examined on the hearing, and if it was not marked with a cross in the circle or a cross opposite the name of appellee it would have been the duty of the court to have rejected the ballot. But such was not the case. On the night of the election, after the ballots were counted and the result declared, they were not sealed up and delivered to the town clerk, but were strung on a wire, the wire was knotted, and they were then placed in the ballot-box and a rope or cord tied around the box, and it was placed in

one of the voting booths in the town hall where the election was held. The town clerk, Lance, locked the hall door and kept the key until the second day after the election, when the judges and clerks went to the town hall, took the ballots from the ballot-box, sealed them up and delivered them to the town clerk. It also appears from the evidence that a justice of the peace and a police magistrate each had a key to the town hall. It thus appears that the ballots were left in the town hall, where they might be reached and tampered with by a person who might feel disposed to do so. If, after the polls are closed, the votes counted and the result declared, the judges of election for any cause are unable to deliver the ballots and poll-books to the proper custodian, it is their duty to keep such ballots and poll-books in their possession, so that no one can have access to them, until such time as they can be delivered over to the proper custodian, otherwise the ballots will lose their value as evidence when relied upon to impeach or discredit the result as shown by the poll-books. (*Kingery* v. *Berry*, 94 Ill. 515.) There is no evidence here, it is true, that the ballots were meddled with by unauthorized parties, but they were left in the town hall from Tuesday night until Thursday in an exposed condition, where they might have been reached and tampered with. Under such circumstances we are of opinion that before the ballots could be used to impeach the returns as shown by the poll-books, it devolved upon the appellant to prove that the ballots were not changed or tampered with before they were delivered to the custodian on the second day after the election.

We are therefore of opinion that the ruling of the court on the ballot mentioned was correct, but for the errors indicated the judgment will be reversed and the cause remanded. *Reversed and remanded.*