[Crim. No. 1940. Second Appellate District, Division Two.—April 2, 1930.]

In the Matter of the Application of JACOB BERMAN for a Writ of Habeas Corpus.

Otto Christensen for Petitioner.

Buron Fitts, District Attorney, Walter Stewart, Chief Deputy District Attorney, A. H. Van Cott and William McKay, Deputies District Attorney, Hewitt, McCormick & Crump, Joseph L. Lewinson and F. Walton Brown for Respondent.

THOMPSON (IRA F.), J.—The petitioner was ordered confined in the county jail of Los Angeles County for contempt of court in refusing to answer twenty-five questions asked of him upon the taking of his deposition in a cause pending in the Superior Court, the confinement to continue until he should purge himself of the contempt by making answers to the interrogatories. The reason assigned for his refusal was that to answer the questions might tend to incriminate him.

Testimony was given by the former president of the board of directors of the Julian Petroleum Corporation to the effect that petitioner was employed by him some time in the spring of 1925 and placed in charge of the stock transfer department of that company where he continued to work until May 2, 1927. There was also testimony, and the petitioner admitted, that his deposition had been taken in a case pending in the Superior Court of Los Angeles County, entitled *R. Guenther* v. *H. J. Barneson et al.* All of the questions, for the refusal to answer which the petitioner was committed, relate to this deposition. Thirteen questions and answers therein were separately read to the witness and he was asked if he had not been asked the question and made the answer. With one exception only, substantially the following question was put to him: "I ask you whether the answer just read is not a true statement of fact in response to the question just read?" In each instance the witness declared his wish to stand upon his constitutional right and refused to answer the question upon the ground that it might tend to incriminate him. The substance of the thirteen questions thus propounded in the Barneson deposition may be stated as follows: (1) Whether the witness had had some connection with the Julian Petroleum Corporation from some time in 1924 until May 3, 1927; (2) a brief description

of that connection and when it originated: (3) the nature of the business transactions conducted by the witness with a man named Streeter of Barneson & Co., stock brokers; (4) whether the witness and Streeter had transactions by which they borrowed money "one from the other"; (5) whether the witness didn't buy and sell stock to and borrow money from Streeter; (6) when the witness first bought stock from him; (7) whether he bought stock through Streeter; (8) whether the usual transaction under which he placed orders with Streeter to buy stock was to buy it on the Los Angeles stock exchange; (9) over what period of time these transactions extended; (10) during what period of time the witness had business with Streeter by which he sold the latter stock of the Julian Petroleum Corporation; (11 and 12) whether these stock purchases through Barneson & Co. commenced some time in 1926; (13) whether the witness could fix more definitely the time when he first sold stock to Streeter or Barneson & Co. after the former had associated himself with that firm. The Superior Court judge before whom the deposition was being taken and who adjudged petitioner to be guilty of contempt found that the witness had been employed by the Julian Petroleum Corporation and had charge of the transfer of stock of that corporation from about January 1, 1926, until May 2, 1927, and that by reason of such employment he waived any privilege he might otherwise have had against disclosing his transactions in connection therewith or against testifying in the action. He also found that petitioner waived his privilege by giving his deposition in the case of *Guenther* v. *Barneson et al.* And he also made a finding to the effect that to answer the questions would not tend to criminate the petitioner of perjury and that he did not claim his privilege in good faith or "through any belief—that his answers to all or any of said questions would or might tend . . . to incriminate him, but the refusal . . . to answer each and all of said questions was . . . for the purpose of shielding and protecting defendants in this case. . . . ''

We have, therefore, to examine first the contention that petitioner, by giving his deposition in the case of *Guenther* v. *Barneson et al.,* waived his privilege against testifying, assuming for the purpose of this as well as the succeeding question, that to answer the interrogatories would

tend to incriminate the petitioner. The problem is not entirely new. In *Overend* v. *Superior Court*, 131 Cal. 280 [63 Pac. 372], the prosecuting witness who had testified at the preliminary hearing of one against whom a criminal complaint had been filed, refused to testify at the trial in the Superior Court on the ground that his evidence might tend to incriminate him. The trial judge thereupon found that the witness had waived his privilege by testifying at the preliminary hearing and sentenced him for contempt. The Supreme Court says, in reviewing the judgment of contempt: "It appears that the trial court based its judgment of contempt largely upon the ground that the witness had, without objection, testified at the preliminary examination of Minnie Campbell, and for that reason had waived his right to refuse to testify at the trial upon the ground that his evidence would tend to convict him of a felony. The position of the trial court in this regard is untenable. This question of waiving the privilege is discussed and decided in *Temple* v. *Commonwealth*, 75 Va. 896, and *Cullen* v. *Commonwealth*, 24 Gratt. (Va.) 624. It is said in those cases that the witness' statements elsewhere have nothing to do with the question." We find a like declaration in *People* v. *Cassidy*, 213 N. Y. 388 [Ann. Cas. 1916C, 1009, 107 N. E. 713], as follows: "The weight of authority is against the claim of the people that Walter by giving testimony before Justice Scudder waived his constitutional right to decline to give testimony on the trial of Willett that could be used against him in a criminal case. *Emery* v. *State*, 101 Wis. 627 [78 N. W. 145]; *Overend* v. *Superior Court*, 131 Cal. 280 [63 Pac. 372]; *State* v. *Burrell*, 27 Mont. 282 [70 Pac. 982]; *Temple* v. *Commonwealth*, 75 Va. 892; *Cullen* v. *Commonwealth*, 24 Gratt. (Va.) 624; *Matter of Mark*, 146 Mich. 714 [110 N. W. 61]; *Samuel* v. *People*, 164 Ill. 379 [45 N. E. 728]; *Georgia R. & B. R. Co.* v. *Lybrend*, 99 Ga. 421 [27 S. E. 794]; *Miskimmins* v. *Shaver*, 8 Wyo. 392 [49 L. R. A. 831, 58 Pac. 411]; *Boston Marine Ins. Co.* v. *Slocovich*, 14 N. Y. St. Rep. 718; *Commonwealth* v. *Phoenix Hotel Co.*, 157 Ky. 180 [162 S. W. 823]; *State* v. *Lloyd*, 152 Wis. 24 [Ann. Cas. 1914C, 415, 139 N. W. 514]; *Ex parte Wilson*, 39 Tex. Cr. Rep. 630 [47 S. W. 996]." These authorities amply establish the rule prevailing in this jurisdiction, and as we think, in accordance with sound reason.

█ We therefore turn to the claim that the witness had waived his privilege by reason of his employment as agent of the Julian Petroleum Corporation. A more definite and accurate statement of the proposition advanced is, that one who is employed in a fiduciary capacity has no privilege to assert in so far' as his testimony relates to transactions occurring in the course of his employment. In other words, if this argument be sound, an agent accused of embezzlement is not accorded the same protection against giving testimony to be used to convict him as is one charged with murder. If this be true it is a strange anomaly in the law. Nor has our attention been called to any authority which directly supports the argument. We have been cited to *Johnson* v. *United States*, 228 U. S. 456 [47 L. R. A. (N. S.) 263, 57 L. Ed. 919, 33 Sup. Ct. Rep. 572], and *In re Fuller*, 262 U. S. 90 [67 L. Ed. 881, 43 Sup. Ct. Rep. 496], but those authorities simply determine that where the title to one's books and records has passed to his trustee in bankruptcy that the bankrupt has ''no constitutional right to prevent'' their ''use for any legitimate purpose.'' Furthermore, it cannot possibly be urged that *Eggers* v. *Fox*, 177 Ill. 185 [52 N. E. 269], is in point. That case simply decides that where a witness does not assert his privilege it is error for the court to refuse to permit him to testify. No one, of course, can seriously contend that an agent is not under the necessity of accounting to his principal, as is declared in the two English cases relied upon by counsel, *Green* v. *Weaver*, 1 Sim. 404, and *Robinson* v. *Kitchin*, 25 L. J. Eq. (N. S.) 441 (1855), but it can scarcely be argued that because therein it was held incumbent upon the brokers to relate their transactions even though incidentally they became subject to statutory penalties, not by reason of the things and matters it was sought to discover, but as the result of assuming to act as brokers at all, that those authorities should have the effect of persuading us to limit the natural extent of a constitutional provision adopted for the very purpose of putting an end to the practice of extorting confessions and admissions which once prevailed in the absence of such a guaranty. We are not at all inclined to whittle away at these safeguards of American liberty until they become nothing but shallow pretenses, but rather we would, wherever proper and possible,

give them renewed vigor and renewed vitality. Not only from the standpoint of reason but also from precedent in our own jurisdiction do we feel constrained to declare that an agent does not by becoming such, waive his constitutional right not to give testimony tending to incriminate him. In *People* v. *Millsap*, 85 Cal. App. 733 [260 Pac. 378, 380], the defendant was charged with perjury in having verified an answer to a complaint. The court said: "The allegations which we have summarized from the complaint clearly show that the appellant received money of the plaintiff in said civil action in a large amount; that at the time he received it he was acting in a fiduciary capacity for her; that instead of investing and keeping it for her, which he should have done in the due and lawful execution of his trust, he fraudulently appropriated it to his own use and refused on demand to return it. This is sufficient to make out a case of embezzlement under sections 503 and 506 of the Penal Code. (10 Cal. Jur. 265; *People* v. *Shearer*, 143 Cal. 66 [76 Pac. 813]; *People* v. *Gordon*, 133 Cal. 328 [85 Am. St. Rep. 174, 65 Pac. 746]; *People* v. *Steffner*, 67 Cal. App. 23 [227 Pac. 699].) Although neither the date at which this misappropriation occurred nor the dates on which plaintiff demanded the return of her money are alleged, yet a prosecution for the embezzlement was not barred by the statute, at least as to the sum of $8,500, for that amount was received by appellant within three years before he verified the answer, and, of course, could not have been embezzled before it was received. An admission of the truth of these allegations would therefore have subjected appellant to a criminal prosecution for embezzlement, and he was not required by section 446 of the Code of Civil Procedure to verify his answer."

Turning now to the finding of the court that the petitioner's claim of privilege was not asserted in good faith, but for the purpose of shielding certain of the defendants, let us consider to what extent the court is authorized to decide the questions the witness must answer. It must be obvious, as is said in *Overend* v. *Superior Court, supra*, that the witness "is not required to disclose all the facts, as this would defeat the object for which he claims protection." It is equally apparent that the witness cannot arbitrarily refuse to testify without the existence in fact of a real

danger, and that some discretion must rest in the court whereby it may prevent the mantle of protection from being turned into a cloak for fraud and trickery. What is the test by which the court and the witness are to be guided in the adjustment of apparently conflicting rights? Chief Justice Marshall, in the case of *United States* v. *Burr* (*In re Willie*), 25 Fed. Cas., page 38, said:

"When two principles come in conflict with each other, the court must give them a reasonable construction, so as to preserve them both to a reasonable extent. The principle which entitles the United States to the testimony of every citizen, and the principle by which every witness is privileged not to accuse himself, can neither of them be entirely disregarded. They are believed both to be preserved to a reasonable extent, and according to the true intention of the rule and of the exception to that rule, by observing that course which it is conceived courts have generally observed. It is this:

"When a question is propounded, it belongs to the court to consider and to decide whether any direct answer to it can implicate the witness. If this be decided in the negative, then he may answer it without violating the privilege which is secured to him by law. *If a direct answer to it may criminate himself, then he must be the sole judge what his answer would be. The court cannot participate with him in this judgment, because they cannot decide on the effect of his answer without knowing what it would be; and a disclosure of that fact to the judges would strip him of the privilege which the law allows, and which he claims.* It follows necessarily, then, from this statement of things, that if the question be of such a description that an answer to it may or may not criminate the witness, according to the purport of that answer, *it must rest with himself, who alone can tell what it would be to answer the question or not.* If, in such a case, he say upon his oath that his answer would criminate himself, the court can demand no other testimony of the fact. If the declaration be untrue, it is in conscience and in law as much a perjury as if he had declared any other untruth upon his oath; as it is one of those cases in which the rule of law must be abandoned or the oath of the witness be received.

"The counsel for the United States have also laid down this rule according to their understanding of it; but they

appear to the court to have made it as much too narrow as the counsel for the witness have made it too broad. According to their statement a witness can never refuse to answer any question unless that answer, unconnected with other testimony, would be sufficient to convict him of a crime. This would be rendering the rule almost perfectly worthless. Many links frequently compose that chain of testimony which is necessary to convict any individual of a crime. It appears to the court to be the true sense of the rule that no witness is compellable to *furnish any one of them against himself.* It is certainly not only a possible but a probable case that a witness, by disclosing a single fact, may complete the testimony against himself, and to every effectual purpose accuse himself as entirely as he would by stating every circumstance which would be required for his conviction. That fact of itself might be unavailing, but all other facts without it would be insufficient. While that remains concealed within his own bosom he is safe; but draw it from thence, and he is exposed to a prosecution. The rule which declares that no man is compellable to accuse himself would most obviously be infringed by compelling a witness to disclose a fact of this description.'' (Italics ours.)

That this concise yet comprehensive statement of the celebrated chief justice remains the law to-day is evident from the fact that almost every case throughout the United States, down to and including *Mason* v. *United States,* 244 U. S. 362 [61 L. Ed. 1198, 37 Sup. Ct. Rep. 621], has quoted it with approval. Another leading pronouncement is one by Lord Chief Justice Cockburn in *Regina* v. *Boyes,* 1 Best & S. 311, adopted in the case of *Brown* v. *Walker,* 161 U. S. 591 [40 L. Ed. 819, 16 Sup. Ct. Rep. 644, 648], as follows:

'' '(T)o entitle a party called as a witness to the privilege of silence, the court must see, from the circumstances of the case and the nature of the evidence which the witness is called to give, that there is reasonable ground to apprehend danger to the witness from his being compelled to answer,' although 'if the fact of the witness being in danger be once made to appear, *great latitude should be allowed to him in judging for himself of the effect of any particular question.'*

'' 'Further than this,' said the Chief Justice, 'we are of opinion that the danger to be apprehended must be real and appreciable, with reference to the ordinary operation of

law in the ordinary course of things—not a danger of an imaginary and unsubstantial character, having reference to some extraordinary and barely possible contingency, so improbable that no reasonable man would suffer it to influence his conduct. We think that a merely remote and naked possibility, out of the ordinary course of the law and such as no reasonable man would be affected by, should not be suffered to obstruct the administration of justice. The object of the law is to afford to a party, called upon to give evidence in a proceeding *inter alios*, protection against being brought by means of his own evidence within the penalties of the law. But it would be to convert a salutary protection into a means of abuse if it were to be held that a mere imaginary possibility of danger, however remote and improbable, was sufficient to justify the withholding of evidence essential to the ends of justice.'' (Italics ours.)

In *Ex parte Butt*, 78 Ark. 262 [93 S. W. 992, 995], the court quotes from *State* v. *Thaden*, 43 Minn. 255 [45 N. W. 447], relative to the rule laid down by Chief Justice Cockburn as follows: ''To this we would add that, when such reasonable apprehension of danger appears, then inasmuch as the witness alone knows the nature of the answer he would give, he alone must decide whether it would criminate him. This, we think, is substantially what Chief Justice Marshall meant by his statement of the rule in the Burr trial.'' Another phrasing of the rule is contained in *Wilson* v. *Ohio Farmers Ins. Co.*, 164 Ind. 462 [73 N. E. 892], in these words: ''If a witness place his refusal to answer on this ground, his claim of privilege must be respected, *unless it be clear from his whole examination that he is mistaken in his supposition* that his answer would tend in any degree to criminate him, or else that his refusal is purely contumacious. . . . An admission, for instance, that he has converted moneys which came into his hands as agent of appellant during the time in question would furnish an important item of evidence under an indictment assigning perjury upon the testimony that he gave upon his trial for embezzlement. . . . '' (Italics ours.) To the same general effect reference may be had to *Foot* v. *Buchanan*, 113 Fed. 156; *People* v. *Zazove*, 311 Ill. 198 [142 N. E. 543]; *Ex parte Senior*, 37 Fla. 1 [32 L. R. A. 133, 19 South. 652]; *Floyd* v. *State*, 7 Tex. 215; *Poole* v. *Perritt*, 1 Speers (S. C.), 128; *Chamber-*

*lain* v. *Willson*, 12 Vt. 491 [36 Am. Dec. 356]; *Ex parte Irvine*, 74 Fed. 955; *Ward* v. *Sykes*, 61 Miss. 649; *Kirschner* v. *State*, 9 Wis. 140; *United States* v. *Heike*, 175 Fed. 852; *State* v. *Edwards*, 2 Nott & McC. (S. C.) 17 [10 Am. Dec. 557]; *In re Moser*, 138 Mich. 302 [5 Ann. Cas. 31, 101 N. W. 588].

We should not close this *résumé* of precedent law without two or three excerpts from cases bearing particularly upon the question of the good faith of the witness. From *People* v. *Forbes*, 143 N. Y. 219 [38 N. E. 303, 306], we select this language:

"The witness who knows what the court does not know, and what he cannot disclose without accusing himself, must in such cases judge for himself as to the effect of his answer; and if, to his mind, it may constitute a link in the chain of testimony, sufficient to convict him when other facts are shown, or to put him in jeopardy, or subject him to the hazard of a criminal charge, indictment, or trial, he may remain silent. While the guilty may use the privilege as a shield, it may be the main protection of the innocent; since it is quite conceivable that a person may be placed in such circumstances, connected with the commission of a criminal offense, that, if required to disclose other facts within his knowledge, he might, though innocent, be looked upon as the guilty party. (*Adams* v. *Lloyd*, 3 Hurl. & N. (Eng.) 363.)

"But it is urged that the relator made use of the privilege, not in good faith, for his own protection from any peril, actual or apprehended, but as a pretext' for shielding his friends or associates, and that the facts and circumstances before the learned judge presiding at the oyer and terminer were of such a nature as to warrant him in so deciding as a matter of fact, and that such finding is not reviewable here. The weight of authority seems to be in favor of the rule that the witness may be compelled to answer when he contumaciously refuses, or when it is perfectly clear and plain that he is mistaken, and that the answer cannot possibly injure him, or tend in any degree to subject him to the peril of prosecution. But the courts have recognized the impossibility in most cases of anticipating the effect of the answer. Where it is not so perfectly evident and manifest that the answer called for cannot incriminate as to preclude

all reasonable doubt or fair argument, the privilege must be recognized and protected." In *Sovereign Camp Woodmen of the World* v. *Bailey*, (Tex. Civ. App.) [163 S. W. 683], we find the following: "When a witness desires to be relieved from answering a question, he must swear that he believes that his answer would incriminate him. He cannot sit silently by and refuse to answer without giving a reason for his silence. (*Rosendale* v. *McNulty*, 23 R. I. 465 [50 Atl. 850]; *Ex parte Stice*, 70 Cal. 51 [11 Pac. 459]; *Scott* v. *Miller*, 5 Jur. (N. S.) 858, cited in note to the Ohio case herein cited.) The privilege cannot be put forward for the purpose of concealing facts in the interest of some third person. (*People* v. *Foundry Co.*, 201 Ill. 236 [66 N. E. 349]; *Re Moser*, 138 Mich. 302 [5 Ann. Cas. 31, 101 N. W. 589]; *Lewisohn* v. *O'Brien*, 176 N. Y. 253 [68 N. E. 353].)

"In this case it should not appear that the evidence asked of the Holzheusers as to the killing of L. H. Bailey would subject them to any danger from a criminal prosecution, but that the rule intended for the protection of accused persons is being used to protect the interests of the minor child, they should be compelled to answer. They should be compelled to swear unequivocally that their testimony would incriminate them, and then the court should be satisfied that there is reasonable ground to apprehend danger to the witnesses from their being compelled to answer." And in *In re Stewart*, 121 Wash. 429 [209 Pac. 849, 852], quoting from what the court designates the modern rule as found in 28 R. C. L. 428, it is said: "There are several English authorities which hold that a witness is the sole judge of whether answering a certain question asked would tend to incriminate him. There are also American authorities which seem to lean to the same view. However, the great weight of authority is to the contrary, and it is now settled, both in England and in this country, that it is the province of the court to determine in the first instance under all the circumstances of the case whether any direct answer to a proposed question has a tendency to criminate a witness, and, of course, it is the duty of the court, while it protects the witness in the due exercise of his privilege, to take care that he does not, under the pretense of defending himself, screen others from justice, or withhold evidence which he might safely give. Otherwise it would be in the power of every witness to deprive parties

of the benefit of his testimony, by a merely colorable pretense that his answers to questions would have a tendency to implicate him in some crime or misdemeanor, or would expose him to a penalty or forfeiture, *when it is clear that the questions have no such tendency.* The court must be able to discern from the character of the question and the other facts adduced in the case some tangible and substantial probability that the answer of the witness might help to convict him of a crime. Sometimes it may be difficult to discern the dividing line, but in all such cases the doubt should be solved in favor of the witness. Certainly, where the witness on oath, declares his belief that the answer to the question would criminate or tend to criminate him, the court cannot compel him to answer, unless it is perfectly clear, from a careful consideration of all the circumstances of the case, that the witness is mistaken, *or* is acting in bad faith, and that the answer cannot possibly have any such tendency. For the purpose of this discussion a question that criminates, or tends to criminate, a witness may be defined as one the answer to which will show, or tend to show, him guilty of a crime for which he is yet liable to be punished.'' (Italics ours.)

█ It cannot be doubted, from the authorities from which we have quoted and which we have cited, that the court is first charged with the responsibility of determining whether there is a real danger. Obviously, it can as a matter of law say in a proper case that the statute of limitations has run against the offense. Where complete immunity is provided by law it can so determine. Where the facts disclose beyond reasonable doubt that the acts which the witness fears to disclose do not in law constitute an offense it can so declare. In all of the cases cited, however, it is to be observed that the statement is that it is the province of the court to say ''whether any direct answer to a proposed question has a tendency to criminate'' the witness, which is but another way of saying that the court must determine that no direct answer which the witness may make can tend to criminate him.

█ When the petitioner here was asked whether the answers did not relate ''a true statement of fact in response to the'' questions asked, if he had answered ''No'' he would have given evidence, which beyond all peradventure of doubt would have tended to convict him of perjury. It

would have been a direct answer. How could the trial judge possibly find that no direct answer could tend to criminate him? This is an example of what Chief Justice Marshall had in mind when he said: "(I)f the question be of such a description that an answer to it may or may not criminate the witness, according to the purport of that answer, it must rest with himself, who alone can tell what it would be, to answer the question or not." And likewise it cannot be gainsaid that if the witness here had answered the interrogatories asking whether he gave the answers claimed to have been given by him in the deposition he would, if he was in fact liable to prosecution for perjury, have forged one of the links in the chain of evidence necessary to convict him. The view we entertain makes it unnecessary to discuss the question whether answers to the interrogatories would also have had a tendency to criminate the witness of the crime of embezzlement in connection with the affairs of the Julian Petroleum Corporation. It is but just to say that there was some evidence introduced indicating a desire on the part of the witness to protect certain defendants in the action. He testified, however, that that was not the reason he refused to testify. Additionally, it should be noted that wherever the fraud of the witness is assigned as a reason why the witness may be compelled to break his silence it is connected with a statement to the effect "that the answer cannot possibly have the tendency" to criminate him. In other words, where the answer does have the tendency to criminate, it can make no difference what other purpose his silence serves. This is the substance of the decision in *People* v. *Forbes, supra.*

Petitioner is discharged.

Works, P. J., and Craig, J., concurred.