[Crim. No. 736.   Department One. — June 26, 1901.]

## THE PEOPLE, Respondent, v. MARY McMAHAN, Appellant.

CRIMINAL LAW — EMBEZZLEMENT — INTRUSTING OF MONEY — QUESTION FOR JURY — APPEAL — SUPPORT OF VERDICT. — Upon a trial upon a charge of the embezzlement of money fraudulently appropriated by the defendant, to whom it had been intrusted by the prosecuting witness for safe-keeping, while the owner slept, the question whether the money was intrusted to the defendant is for the jury to determine, under proper instructions; and their verdict will not be disturbed upon appeal, if the view taken by the jury is a reasonable one, though it is possible to take different views of the evidence.

ID. — PLACE OF KEEPING MONEY IMMATERIAL — THEFT — INTENT TO DEPRIVE OWNER. — Where it appears that the owner gave up all control of the money to the defendant, while he slept, and that the defendant accepted the trust to safely keep it in the same room until

---

[1] 80 Am. St. Rep. 80.

morning, the place where the money was kept was immaterial; and if the defendant violated the agreement, and either stole the money, or connived at its being stolen, with the intent to deprive the owner of it, the defendant was guilty of embezzlement.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. William P. Lawlor, Judge.

The facts are stated in the opinion.

Charles A. Low, for Appellant.

Tirey L. Ford, Attorney-General, and A. A. Moore, Jr., Deputy Attorney-General, for Respondent.

GRAY, C. — The defendant appeals from a judgment convicting her of embezzlement and from an order denying her a new trial.

The only point urged by appellant is, that the evidence does not show that the crime of embezzlement was committed, for the reasons, — 1. That it fails to show that the property was "intrusted" to the defendant; 2. It fails to show that defendant took the money and converted it to her own use.

The facts of the case pertinent to these questions, so far as necessary to state, are as follows: The defendant and the complaining witness were together, in the afternoon, in a room in a house of ill-fame in the city of San Francisco, and the complainant then gave to said defendant seven dollars, as he says, "for services rendered in that room." They met again in the evening of that day, and with other parties they spent most of the night, moving about from saloon to saloon, indulging in intoxicating liquors. At about four o'clock in the morning, the complaining witness, with a man who had worked for him in his business as a barber, returned with the defendant to her said room. The prosecuting witness was not drunk, as he says, but was very sick, when they reached the room, and his barber friend was sent out after some bromo-seltzer, which the prosecuting witness drank, and soon thereafter the two men turned into the defendant's bed and went to sleep. Before turning in, however, the prosecuting witness had produced a purse containing $265, and asked the defendant to count it and take care of it for him. The defendant counted it, saying to the other man, " Come here, Joe; I want you to see how much

money Harry has got, so that he will have every cent in the morning." She then put the purse back in the pocket of the trousers of the prosecuting witness, and hung the trousers on the back of a chair in the room. The prosecuting witness went to sleep, and thereafter, in the presence of defendant and another woman, called Billings, who came into the room before the prosecuting witness went to sleep, the male companion of the prosecuting witness took the purse from the trousers, poured the money out to see if it was all there, restored it to the purse, returned the purse to the trousers, and left the trousers on the chair. The two women then left the room, the defendant locking the door as she went, but she immediately returned, unlocked the door, secured a cape which she had left, and again went out, locking the door behind her. An hour or two later, the occupants of the room were suddenly aroused by defendant, who excitedly announced to the owner of the money that he had been robbed, to which the owner replied, "You have got the money, and you must give it to me. I gave it to you to take care of it, and you must give me the money." The defendant was soon thereafter arrested, and subsequently most of the money was found by the police, aided by a man who was living with defendant, secreted in the roof of the house where defendant lived. There is other evidence, of a circumstantial nature, in the case, tending to show that the defendant must have either actually removed the money from the room herself, or connived at its removal, while the occupants slept.

"Embezzlement is the fraudulent appropriation of property by a person to whom it has been intrusted." (Pen. Code, sec. 503.) Being properly instructed as to the law of the matter, as we presume the jury were, it was for them to say, from all the evidence before them, whether the money was "intrusted" to the defendant or not. By their verdict of conviction they found that it was so intrusted. Of course, it is possible in this, as it is in most cases, to take different views of the evidence, but we think the view taken by the jury was a reasonable one. Certain it is, that the owner gave up all control of this money to the defendant until he should arise in the morning, and it also appears that she accepted the trust to safely keep the same, counting the money and assuring him that it would be there in the morning; and apparently she undertook to carry out the trust by locking the door and carry-

ing away the key. The place where she kept the money was not material. If she was given control of it under an agreement to keep it safely while the owner slept, the property was intrusted to her, within the meaning of the statute; and if she violated this agreement, and abused the confidence reposed in her, by stealing it away or conniving at its being stolen, with the purpose of depriving the owner of it, and converting it to her own use, she was guilty of embezzlement. All this the jury found she did, and we see no cause to disturb their verdict.

The case of *People* v. *Montarial*, 120 Cal. 691, differs materially in its facts from the case before us, and is not an authority for a reversal of this case. *People* v. *Johnson*, 91 Cal. 265, as to the facts involved, more nearly resembles this case than any we have been able to find; and yet, there is a marked distinction between the facts of the two cases. The evidence in this case goes much further than the Johnson case to show an "intrusting" of the property, and thereby to establish the principal distinguishing element of embezzlement. We quote the language of a concurring opinion in the Johnson case as peculiarly applicable here: "I think that the jury had the right to find that appellant, with the consent of the prosecuting witness, had full actual possession of the money; and whether it was 'intrusted' to him was, I think, under all the circumstances, a question to be determined by the jury, under proper instructions of the court. And I see no error in the instructions on that point."

The judgment and order appealed from should be affirmed.

Haynes, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

Van Dyke, J., Garoutte, J., McFarland, J.