[Crim. No. 568. Third Appellate District.—August 19, 1921.]

# THE PEOPLE, Respondent, v. A. P. BRACKLIS, Appellant.

[1] CRIMINAL LAW—EMBEZZLEMENT—APPROPRIATION IN GOOD FAITH—EVIDENCE—INSTRUCTIONS.—In a prosecution for embezzlement, an instruction that "it is a sufficient defense that the property was appropriated openly and avowedly, and under a claim of title preferred in good faith, even though such claim is untenable," while it states a correct proposition of law, is not applicable where the evidence shows that the defendant did not claim the right to appropriate the property to his own use; but even if there is evidence upon which to base such an instruction, the failure to give it is not error where, under the other instructions given, if the jury give credence to that evidence, they could not convict the defendant.

[2] ID.—GUILT OF DEFENDANT—OPINION OF DISTRICT ATTORNEY—MISCONDUCT.—It is not misconduct for the deputy district attorney, in his argument to the jury, to state his opinion of the defendant's guilt, where that opinion is based upon the evidence.

[3] ID.—PHYSICAL APPEARANCE OF SALES SLIP—POSSESSION OF CARBON COPY BY DEFENDANT — INFERENCE — ARGUMENT — ADMONITION TO JURY.—In this prosecution for embezzlement, from the physical appearance of the carbon back of a sale slip in evidence, the extent of the original writing on which by the defendant was in dispute, it was not misconduct for the district attorney in his argument to the jury to draw the logical inference that a carbon copy was made, and that such copy must have been in the possession of the defendant; but if it was improper for the district attorney to state as a fact that the defendant had the carbon copy, the prompt admonition of the court to the jury to disregard the statement prevented any prejudice therefrom.

[4] ID. — DEFENDANT AS WITNESS — WEIGHT OF TESTIMONY — INFERENCES.—While the defendant is not required to take the stand, and no unfavorable inference is to be drawn from his failure to do so, when he does testify, his testimony is to be weighed by the same standards and subjected to the same tests as that of other witnesses.

APPEAL from a judgment of the Superior Court of Sacramento County. Malcolm C. Glenn, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. B. Reynolds and Charles B. Harris for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Respondent.

FINCH, P. J.—The defendant was convicted of the embezzlement of 150 sacks of potatoes alleged to belong to E. C. Armstrong, the prosecuting witness in the action, and this appeal is from the judgment of conviction and from the order denying the defendant's motion for a new trial. Appellant admits that the evidence is technically sufficient to support the verdict of guilty, but it is argued that such evidence is so weak and unsatisfactory that the alleged errors hereinafter considered were especially prejudicial to his rights.

The people's case depends largely upon the testimony of Armstrong, who was a salesman in the employ of Gale Brothers, wholesale produce merchants of San Francisco.

Armstrong testified that he purchased 150 sacks of potatoes from the appellant and paid $500 in cash therefor; that he left the potatoes in the appellant's possession with directions to hold them until called for; and that the appellant appropriated them to his own use.

Appellant testified that he ordered 200 sacks of potatoes from Gale Brothers, through Armstrong; that when the potatoes arrived he discovered that the shipment contained 300 sacks; that he informed Armstrong that he could not use all of the potatoes, and that Armstrong thereupon instructed appellant to place 150 sacks of the potatoes in the latter's place of business and said to him, "sell the potatoes just as soon as you can and send the money to the company, or I call here for it"; and that appellant sold the potatoes pursuant to such instructions.

The price of the 300 sacks of potatoes was $1,009, and appellant paid Gale Brothers a total of $500 on account of potatoes purchased. Armstrong and appellant contradict each other in their respective accounts of what occurred.

[1] Counsel for appellant correctly state, if appellant's testimony be true, that "Armstrong was the agent of Gale Bros. & Co., who had sold defendant some of the potatoes and as such had the authority to authorize defendant to sell the other portion of said car of potatoes which Arm-

strong had induced him to place in his store.'' Based on the facts so stated, the defendant requested and the court refused the following instruction: ''Upon an indictment for embezzlement, it is a sufficient defense that the property was appropriated openly and avowedly, and under a claim of title preferred in good faith, even though such claim is untenable.'' The defendant did not claim the right to appropriate the property to his own use. If his testimony be true and the inference of his counsel therefrom correct, then appellant was a bailee for Gale Brothers, with authority to sell and under obligation to account for the proceeds. Embezzlement of the proceeds of such sale might constitute a different crime from that charged but not an appropriation under a claim of title preferred in good faith. While the proposed instruction states a correct proposition of law, it is not applicable to the evidence. Even if there had been evidence upon which to base the proposed instruction, the jury could not have convicted the defendant, if his testimony was given credence, under other instructions given. Of its own motion the court instructed the jury that in order to convict the defendant it must first appear from the evidence, to a moral certainty and beyond a reasonable doubt, ''That the said personal property then and there *belonged to said E. C. Armstrong and had been purchased by said Armstrong from said Bracklis.''*

[2] It is urged that the deputy district attorney was guilty of misconduct in his argument to the jury. In his opening argument he addressed the jury as follows: ''I am glad to tell you, and I say it with all sincerity, that not once during the time which you sat here as jurors have I ever asked of you a verdict that I did not absolutely believe in . . . and so, when I arise to ask you at this time, with all the sincerity that is within me, for a verdict of guilty in this case, I do it conscientiously, knowing that I am asking for the correct verdict. . . . Now, I ask at your hands a verdict of guilty in this case; I am convinced that this man is guilty, and I shall argue his guilt to you and I shall not go one jot from the evidence in this case.'' From the concluding sentence it fairly appears that the prosecutor was basing his opinion of the defendant's guilt upon the evidence. Such expression of opinion was not misconduct requiring a reversal. It was long ago stated, as

a rule of ethics, that an attorney ought not to add the
weight of his personal opinion to the evidence in support
of his cause.   This rule is expressed in the code of ethics
adopted by the American Bar Association, as follows: "It
is improper for a lawyer to assert in argument his personal
belief in his client's innocence or in the justice of his
cause."   Strict compliance with this rule by attorneys who
defend, as well as by those who prosecute, would tend to
a higher respect for the profession.  It may be further
said that in this case the statement of which complaint is
made was not assigned as misconduct, nor was any request
made that the court instruct the jury to disregard it.

The prosecutor, evidently referring to the defendant,
said: "Now, pay attention to these things; when I get
to them I will show you that Armstrong's reputation is far,
far higher than that man, it towers above him—" He
was here interrupted by counsel for the defendant, who
assigned the statement as misconduct.  Thereupon the prose-
cutor said: "I will withdraw that. . . . I ask the jury to
disregard it."  In view of the prompt withdrawal of the
objectionable statement and the request that the jury disre-
gard the remarks, it is improbable that any juror was
influenced thereby.

[3]   There was introduced in evidence by the prosecution
and marked Exhibit "A," what appears to be an ordinary
sales slip in the handwriting of defendant reciting, in effect,
that the defendant had sold to Armstrong 150 sacks of
potatoes for $500, marked "paid" and signed by the de-
fendant.  Armstrong testified that the name "E. C. Arm-
strong" appearing therein was written prior to the delivery
of the paper to him.  The defendant testified that the name
"E. C. Armstrong" was not written by him and did not
appear upon the paper at the time of its delivery; that
it was written on a sales tab of the California Fruit Market
which the defendant was using temporarily while having
some of his own printed; that when he received his own
tabs from the printer he threw away the remaining pages
of the California Fruit Market tab, or maybe used them for
scratch paper.  The reverse side of the paper in evidence
seems to have been a carbon surface for the purpose of
making a copy.  Production of the carbon copy would have
been almost conclusive proof as to whether the name "E. C.

Armstrong'' was originally written into the paper in controversy. In the closing argument for the prosecution the following occurred: "Mr. Farrell: The clinching thing in this case as to that, and that is this, that the same pencil wrote it. Imagine that: How could Armstrong get the pencil away from him? And if it wasn't the same pencil, how in God's name, I will ask you as sensible men and women, that Armstrong could take a pencil the graphite of which was identical with the one Bracklis had down in that store. Mr. Harris: That question was asked specifically; he couldn't tell about the matter. Mr. Farrell: Well, I am afraid we won't get through if I am going to be continually interrupted. Mr. Harris: It is a false statement. He couldn't tell that graphite in each and every letter was the same. The Court: Yes, that is a question for the jury to determine. . . . Mr. Farrell: Now, let me call your attention to this, and bear this well in mind: Look at the back of it [referring to People's Exhibit 'A']; there is a carbon or two of it some place; there is a carbon. Who has got the carbon? Where is it? He has got it. That could not be written without a carbon copy. Where is it? Mr. Reynolds: We assign that as misconduct on the part of the district attorney; no evidence in this case that there was a carbon copy. The Court: You can't make that as a statement of fact. He can argue it. The jury will disregard the statement. Mr. Reynolds: The evidence in the case wasn't to that effect. The evidence was that Bracklis' store was attached and everything taken by the constable. . . . Mr. Farrell: I say to you again, the clinching feature in this case is, where is the carbon copy? Dismiss the handwriting from your minds— Mr. Reynolds: I again cite that as error on the part of the district attorney. The Court: There is no evidence of that. The jury will disregard it. Mr. Reynolds: Misconduct of the grossest kind. Mr. Farrell: I argue from the physical appearance of the carbon back. That could not be written unless there was a carbon —or a carbon was made." It was not misconduct for the prosecutor to draw any logical inference from the physical appearance of the exhibit. Since it is usual for the maker to retain the carbon copy in such transactions, it was not wandering far afield to argue that the copy must have been in the possession of the defendant. **[4]** While the

defendant is not required to take the stand, and the illogical rule prevails that no unfavorable inference is to be drawn from his failure to do so, yet, when he does testify his testimony is to be weighed by the same standards and subjected to the same tests as that of other witnesses. In the case of *People* v. *Mead*, 145 Cal. 500, [78 Pac. 1047], the defendant was convicted of the crime of conniving at, consenting to, and permitting his wife to be placed in a house of prostitution. The defendant had taken the stand in his own behalf. It was claimed that the district attorney was guilty of misconduct in commenting upon the failure of the defendant to deny that the woman was his wife, a vital issue in the case. The court said: "There was no impropriety in the district attorney commenting upon the fact that he had made no express denial of the fact." If it was improper for the prosecutor to state as a fact that the defendant had the carbon copy, the prompt admonition of the court to the jury to disregard the statement must be held to have prevented any prejudice therefrom.

The judgment and order appealed from are affirmed.

Burnett, J., and Hart, J., concurred.