[Crim. No. 720.   Third Appellate District.—April 29, 1924.]

# THE PEOPLE, Respondent, v. E. W. STEFFNER, Appellant.

[1] CRIMINAL LAW—EMBEZZLEMENT—ENTRUSTING OF FUNDS—PLEAD-ING.—In this prosecution on a charge of embezzlement, the information alleging that on or about a given date, in the county, defendant was "intrusted" by the complaining witness with a specified sum of money, and defendant "then and there received the said . . . money in trust as aforesaid, and while so entrusted and in possession of said property, he . . . did willfully, unlawfully and feloniously and fraudulently embezzle, convert and appropriate to his own use the said money, not in the due and lawful execution of said trust as aforesaid, contrary," etc., while not as full and complete as might be desired as to the nature and character of the trust, substantially complied with the provisions of the code under which it was drawn, and the court properly overruled defendant's demurrer and denied his motion in arrest of judgment.

[2] ID.—APPROPRIATION OF ENTRUSTED FUNDS—PROVINCE OF JURY.—In such prosecution, if defendant was "intrusted" with the money of the prosecuting witness, and while acting in such trust capacity, fraudulently appropriated the same, he was guilty of embezzlement; and the question of whether or not he was so "intrusted" was a question for the jury to determine.

[3] ID.—ASSIGNMENT OF AUTOMOBILE SALES CONTRACT — FAILURE OF AGENT TO PAY ASSIGNEE — OSTENSIBLE AGENCY — VERDICT — EVIDENCE.—In this prosecution of an automobile dealer on a charge of embezzlement, as the result of his failure to pay over to the bank to which he had assigned an automobile sales contract the balance due under said contract, the funds for that purpose having been paid over to him by the prosecuting witness (the purchaser of the automobile), the verdict of guilty was justified by the evidence; and there was no evidence from which it could reasonably be said that defendant was the ostensible agent of the bank, or that the prosecuting witness had knowledge of any such claim of agency on defendant's part.

[4] ID.—AGENCY CAPACITY—EVIDENCE—VERDICT—ESTOPPEL.—In such prosecution, assuming there was a conflict in the evidence as to the capacity in which defendant received the money from the prosecuting witness, that question was determined by the

1.  See 10 Cal. Jur. 252; 9 R. C. L. 1288.

2.  Definition of embezzlement, notes, 98 **Am. Dec.** 126; 87 **Am. St. Rep.** 19; 14 **A. L. R.** 899. See, also, 10 **Cal. Jur.** 238; 9 **R. C. L.** 1264; 16 **R. C. L.** 183.

verdict adverse to defendant; and if the agreement and understanding between the prosecuting witness and defendant was to the effect that the money was entrusted to defendant as the agent and trustee of the prosecuting witness, defendant thereafter was estopped from denying he was such, or from claiming to have acted in any other capacity.

[5] ID.—AUTHORITY TO COLLECT MONEY—KNOWLEDGE—ESTOPPEL.—In such prosecution, the mere fact that defendant had assigned many similar conditional sale contracts to the trust company and that, in certain specific instances where the purchasers had defaulted in their payments, the trust company had notified defendant of that fact and instructed him to see the purchasers and collect the delinquent installments, or some other similar direction was given, did not make defendant the agent of the trust company for the collection of money in all cases, and particularly not in a case where the amounts payable under the contract were not due; but assuming that defendant did consider himself authorized to make such collections, defendant was estopped from availing himself of that defense where he did not communicate the fact of such agency to the complaining witness, and the latter, in making the payment to defendant, did not do so in the belief that he was dealing with the agent of the trust company.

[6] ID.—LETTER PARTIALLY IRRELEVANT—INSUFFICIENT GENERAL OBJECTION.—In such prosecution, the trial court did not commit error in admitting in evidence a copy of a letter written by the trust company to defendant calling attention to the full payment to defendant of the account of the complaining witness and stating that, pursuant to defendant's request, it was forwarding its draft to defendant's local bank to cover the balance due on that account, where the objection that it was incompetent, irrelevant and immaterial was addressed to the letter as a whole and, although the first portion of the letter was irrelevant, the latter part was material as bearing upon the issue of the relation between defendant and the trust company and also as to the question whether either defendant or the trust company had considered that the account of the complaining witness had been paid.

[7] ID.—REASON FOR ACTS—CONCLUSION OF WITNESS.—In such prosecution, it was not error to refuse to strike out the portion of an answer of an employee of the trust company, on redirect examination, to a question calling for the reason for not taking up the account of the complaining witness with other moneys or credits of defendant, where such portion of the an-

---

5. See 1 Cal. Jur. 860; 21 R. C. L. 895.
6. See 10 Cal. Jur. 816, 888; 10 R. C. L. 1147; 26 R. C. L. 1031.
7. See 10 Cal. Jur. 954; 11 R. C. L. 571.

swer, although in the nature of a conclusion, was merely an attempt by the witness to state or assign the reason why the trust company had not taken up the account in the manner indicated.

[8] ID.—PAYMENT OF DRAFT—WAIVER OF OBJECTIONS.—In such prosecution, it was not prejudicial error to permit the complaining witness to testify, over the objection of the defense, to payment of a draft drawn by the trust company against him for the balance of his unpaid account, where that matter was fully covered, without objection of any kind, by the testimony of a witness of the trust company.

[9] ID.—AGENCY—MISAPPROPRIATION OF FUNDS—INSTRUCTIONS.—In such prosecution, an instruction that "if any person assumes to act as the agent of another, and in such assumed capacity he is entrusted with, and received into his care and custody, the property of another, for the use of such other person, and thereafter fraudulently and feloniously appropriates and converts such property to his own use, or to any use or purpose not in the due and lawful execution of his trust, he is guilty of embezzlement," was not inapplicable and confusing, or likely to have misled the jury into the belief that he might have been guilty because of his collecting from the complaining witness while pretending to be an agent of the trust company, where the court in other instructions advised the jury that defendant was charged with embezzling certain property from the complaining witness, and that he was not being tried for embezzling anything from the trust company.

[10] ID.—RIGHT TO TAKE FUNDS—MISTAKEN BELIEF—INSTRUCTIONS. In such prosecution, a requested instruction that a "defendant who has converted money to his own use, believing he had a right to do so, is not guilty of embezzlement, even though he is mistaken, and did not have the right to do so," does not conform to the provisions of section 511 of the Penal Code; and, where defendant was not entitled to any instruction embracing the principles of law covered by said section, the refusal of such requested instruction and the giving of an instruction that "if, upon consideration of the whole case, you are satisfied to a moral certainty and beyond all reasonable doubt that the appropriation of the money charged in the information to have been embezzled by the defendant was made by the defendant upon the belief, honestly entertained by him, that he had a lawful right to appropriate the money, the act was not criminal," did not operate to his prejudice.

8. See 2 Cal. Jur. 1020; 2 R. C. L. 250.
9. See 10 Cal. Jur. 272; 14 R. C. L. 775, 817.
10. See 10 Cal. Jur. 251, 275.

**[11]** ID.—IMPRISONMENT FOR DEBT—INSTRUCTIONS.—In such prosecution, there was no evidence justifying defendant's requested instruction that the "statutory crime of embezzlement is not a substitute for imprisonment for debt and cannot be used to punish a party for failure to comply with ordinary obligations to pay money," and it was not error to refuse said instruction.

(1) 20 C. J., p. 458, sec. 55, p. 472, sec. 66.   (2) 20 C. J., p. 409, sec. 2, p. 488, sec. 85.   (5) 20 C. J., p. 424, sec. 13.   (6) 16 C. J., p. 742, sec. 1525.   (7) 17 C. J., p. 333, sec. 3677.   (8) 17 C. J., p. 322, sec. 3664.   (9) 16 C. J., p. 1049, sec. 2493.   (10) 20 C. J., p. 491, sec. 89.   (11) 20 C. J., p. 489, sec. 86.

APPEAL from a judgment of the Superior Court of Lassen County.   W. I. Redding, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Charles C. Holl, Grover C. Julian, R. L. Waggoner, Archibald M. Johnson and A. A. DeLigne for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

GLENN, J., *pro tem.*—Defendant was convicted of the crime of embezzlement.   A motion for a new trial was duly made and denied.   No appeal was taken from this order, the appeal being from the judgment only.

Respondent contends that, as no appeal was taken from the order denying motion for new trial, this court is without power to review the sufficiency of the evidence to support the verdict.   The same point was made, and decided adversely to this contention, in the case of *People* v. *Steffner*, Crim. No. 723, *ante*, p. 1 [227 Pac. 690], in which an opinion has this day been filed.   We refer to that case for our views on the subject.

The sufficiency of the information was challenged by defendant, both by demurrer and motion in arrest of judgment.   So far as is material to be considered here, the amended information provides: "E. W. Steffner is accused by the District Attorney of the said County by this amended

11.   See 2 Cal. Jur. 1026; 2 R. C. L. 261; 14 R. C. L. 786.

information of the crime of felony-embezzlement committed as follows:

"The said E. W. Steffner on or about the 5th day of August, one thousand nine hundred and twenty-two at the said County of Lassen and before the filing of this amended information being then and there intrusted by E. J. Craddock with the following described personal property of him the said E. J. Craddock, namely lawful money of the United States to the amount and value of more than fifty ($50.00) dollars, to-wit, the amount of $684.74 or thereabouts, and the said E. W. Steffner then and there received the said property and money in trust as aforesaid, and while so intrusted and in possession of said property, he, the said E. W. Steffner, to-wit, on or about the 5th day of August, 1922, at Susanville, in said County of Lassen, State aforesaid, did willfully, unlawfully and feloniously and fraudulently embezzle, convert and appropriate to his own use the said money, not in the due and lawful execution of said trust as aforesaid, contrary," etc.

[1] It is claimed that the information does not state facts sufficient to constitute a public offense, and also that it does not substantially conform to the provisions of sections 950 and 952 of the Penal Code, in that the facts constituting the offense are not pleaded, it being asserted that neither the trust relation relied on, nor the character of the trust, is set forth.

The information alleges that E. J. Craddock "intrusted" the defendant with the said money, and that the said money was the money and personal property of the complaining witness; it also shows the fiduciary relation existing at the time of the appropriation by defendant of the said property of Craddock, for, following the above allegation, it is averred "that the said defendant on said date *received the said property and money in trust as aforesaid, and while intrusted and in possession of said property,* the said defendant, on or about the 5th day of August, 1922, fraudulently," etc. Under these allegations it is clear that defendant received and held the money of Craddock as his trustee and for his benefit.

It is uniformly held that it is necessary to state the fiduciary relation existing between the defendant and the owner of the property, as that the defendant was the agent,

servant or clerk, or that the property was held by him pursuant to a trust or bailment. (7 Ency. of Plead. & Prac., p. 418.)

In *People* v. *Neyce,* 86 Cal. 393 [24 Pac. 1091], it is said: "The objections raised by the demurrer and motion in arrest of judgment to the sufficiency of the information are not well taken. The main point here made is, that appellant is not called in the information 'bailee,' 'trustee' or 'agent,' or formally put into any of the classes named in the sections of the code which define embezzlement. But facts constituting the crime were fully stated, and that being so, it was not necessary to designate the appellant by any particular name (*People* v. *Johnson,* 71 Cal. 389 [12 Pac. 261]), and the information in all other respects was unassailable."

It is not necessary to set forth the particulars of the trust relation. In *People* v. *Gordon,* 133 Cal. 328 [85 Am. St. Rep. 174, 65 Pac. 746], the charge being embezzlement, it is said: "The essential elements of embezzlement are the fiduciary relations arising where one intrusts property to another, and the fraudulent appropriation of the property by the latter. (Pen. Code, sec. 503.) The origin or particulars of the relation need not be stated. (2 Bishop's Criminal Law, sec. 323a.)" (Also to the same effect, *People* v. O'Brien, 8 Cal. App. 468 [97 Pac. 679].)

In *Keys* v. *State,* 112 Ga. 392 [81 Am. St. Rep. 63, 37 S. E. 762], the defendant was charged with larceny after trust, or embezzlement. In stating the nature of the charge the court says: "The indictment charges, in substance, that the defendant, on January 6th, 1898, was intrusted with one five dollar bill, lawful money of the value of five dollars by W. J. Bigger, for the use and benefit of the latter, and did on the day and year aforesaid, in the county aforesaid, fraudulently convert the said five dollars to his own use, to the injury and without the consent of Bigger, and without paying Bigger the price thereof."

The indictment was upheld. The statute under which that indictment was drawn provided: "If any person who has been intrusted by another with any money or any other articles or things of value, for the purpose of applying the same for the use and benefit of the owner or person deliver-

ing it, shall fraudulently convert the same to his own use, he shall be punished by imprisonment," etc.

This section is substantially the same as sections 503 and 506 of our Penal Code. Section 503 reads: "Embezzlement is the fraudulent appropriation of property by a person to whom it has been intrusted."

Section 506 is as follows: "Every trustee, . . . agent . . . or person otherwise intrusted with or having in his control property for the use of any other person, who fraudulently appropriates it to any use or purpose not in the due and lawful execution of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, . . . is guilty of embezzlement."

In the indictment in the Keys case, *supra*, it is stated that the money was entrusted for the use and benefit of Bigger. The court points out that it is certain a trust of some kind was set out, and that it would have been more definite had it stated the way the accused was to have disposed of the money for the use and benefit of Bigger. But in this regard the court says: "In this respect it might have been made more definite, but can it be fairly said that because of the omission to go further into detail the accused was not sufficiently informed of the nature of the charge he was called upon to meet? We think not. If, as a matter of fact, Bigger did intrust the accused with five dollars in money with which he was to do something in behalf of the depositor, and if instead of complying with the obligation thus imposed he fraudulently converted the money to his own use, did he not know well enough what the indictment meant?"

In the instant case, while there is no direct averment to the effect that the money was entrusted for the use and benefit of Craddock, no other deduction is possible from the language used, and, therefore, to have added these words would have furnished no additional information. Embezzlement is larceny after trust. The information in this case alleges the trust, and, in appropriate language, the larceny thereafter. The information, while not as full and complete as might be desired, substantially complies with the provisions of the code under which it was drawn, and is, therefore, sufficient. The trial court was correct in over-

ruling the demurrer and in denying the motion in arrest of judgment.

Appellant contends that, assuming the evidence on the part of the prosecution to be true, it is insufficient to establish an implied finding that defendant became the agent or trustee of the prosecuting witness, E. J. Craddock, in the receipt of the money from him, for the purpose of forwarding it to the Anglo-California Trust Company; that the testimony of the prosecuting witness was so inconsistent with the undisputed facts as to be wholly unsupported; that, on the other hand, it does appear that in receiving the money he was acting exclusively for the bank and himself, and not as the agent of Craddock; that if appellant was authorized to collect the money for the bank or for himself, or jointly for himself and the bank, immediately upon payment by Craddock he became divested of the title, and any subsequent wrongful conversion by appellant, if such there was, was not of money belonging to Craddock.

Appellant concedes that it is a well-recognized rule that courts of appeal are bound by the verdict of the jury, when supported by proper and sufficient evidence. The rule is stated by the court in *People* v. *Emerson,* 130 Cal. 562 [62 Pac. 1069], as follows: "For if the evidence which bears against the defendant considered by itself, and without regard to conflicting evidence, is sufficient to support the verdict, the question ceases to be one of law—of which alone this court has jurisdiction—and becomes one of fact upon which the decision of the jury and the trial court is final and conclusive."

[2] If the defendant was "intrusted" with the money of the prosecuting witness, and while acting in such trust capacity, fraudulently appropriated the same, he is guilty of embezzlement. (Pen. Code, sec. 503.) The question of whether or not he was so "intrusted" is a question of fact for the jury to determine. As was said in *People* v. *McMahan,* 133 Cal. 278 [65 Pac. 571], on this particular subject: "Being properly instructed as to the law of the matter, as we presume the jury were, it was for them to say, from all the evidence before them, whether the money was 'intrusted' to the defendant or not. By their verdict of conviction they found it was so intrusted. Of course, it is possible in this, as it is in most cases, to take different views

of the evidence, but we think the view taken by the jury was a reasonable one.''

[3] Is the verdict of the jury justified by the facts of the case? A somewhat extensive review of the evidence will be necessary to determine this question, and, as the testimony of the witness Craddock is of prime importance in this regard, we feel justified in quoting therefrom at length.

Defendant was a retail automobile dealer in Susanville, Lassen County, California. On May 20, 1922, defendant, under the name of Steffner Overland Co., entered into an agreement with E. J. Craddock wherein he agreed to sell, and Craddock agreed to buy, a certain automobile therein described, for the sum of $1,396.70. The contract provided for the payment of $575 at the date of signing, and the balance in monthly installments. This contract was assigned, by an instrument attached thereto, to the Anglo-California Trust Company, executed by Steffner Overland Co., by E. W. Steffner, Mgr., and dated May 31, 1922. The contract and assignment thereof were mailed by defendant to the Anglo-California Trust Co. for discount. It was received by that company on or about June 1st, and a remittance made to the defendant of the sum of $765.50 in payment therefor. Under the terms of the contract the first installment became due on June 27th, and the second, as well as the subsequent installments, were to be paid on the same date in each succeeding month. The first installment was sent direct by Craddock to said company, on or about the date on which it was due. The second installment was, likewise, sent by him on or about July 27th. On August 5th Craddock paid the full balance owing on the contract, amounting to the sum of $684.74 to the defendant, who applied it to his own use and purpose. The prosecution is for the alleged embezzlement of this sum.

The circumstances surrounding this payment were substantially as follows: The first conversation between the parties on the subject occurred near the postoffice in Susanville concerning which the witness Craddock testified: ''Q. Did you have any conversation with him (the defendant) at that time? A. I told him I wanted to pay the balance due on the contract. Pay up on the car in full. I had the

money and he said it was perfectly all right to come to the office in about half an hour and we would fix it up.''

Pursuant to this conversation Craddock went to the defendant's office and there paid him the sum of $684.74, $550 of which was represented by a check drawn in Craddock's favor by one G. Orsi, and on which Craddock indorsed his name, the balance of $134.74 being paid in cash. Concerning the payment thus made Craddock testified: ''Q. At that time did you make any payment to Steffner? A. Yes, sir. Q. How much? A. I paid Mr. Steffner $684.74. Q. Did he say anything at that time about that payment? A. He said he would send it in and he would have my contract within a few days. Q. How did you make that payment, in what way? A. I gave him a check for $550.00 and the balance in cash. $134.74 in cash. Q. Did you get a receipt at that time? A. He gave me a receipt for it, yes.'' The receipt given reads:

''No. 90                                        Aug. 5, 1922.

''Received of E. J. Craddock, six hundred eighty four and 74/100 dollars. Payment on contract covering purchase of Olds Roadster $684.74.

''E. W. STEFFNER.''

The witness testified with reference to the receipt as follows: ''Q. At the time you were in his office you saw him write the receipt, People's Exhibit two, and deliver it to you at that time? A. Yes, sir. Q. What did he say at that time? A. He would send it to the bank and I would get my contract in a few days. That is the best I can remember that he said. Q. What bank did he say? A. The Anglo-California Trust Company.''

Referring to a conversation between the witness and defendant on August 24th, at the latter's residence, the witness testified: ''Q. At that time what conversation was had between you and Steffner, if any? A. I got a slip showing me my payment had come due and I didn't figure I would have any more and on the twenty-fourth of August I got this notice, so I took it up and showed it to Steffner. Q. Did Mr. Steffner receive it from you at that time? A. Mr. Steffner took the slip. Q. Did he give it back to you? A. No sir. Q. What was that?'' At this point there was objection made; after some discussion the objection was

overruled. Thereupon the following occurred: "By Mr. Holl: Further object unless it be shown that the witness knows the contents. By the Court: He asked the witness what it was. By the witness: It was a notice showing me my payment was coming due, seventy-four dollars and some cents. By Mr. Nutting: To whom? A. To me. Q. It was a payment due to the Anglo-California Trust Company Bank? Was that a payment due from you to them? A. From them to me. It was a payment on my car. Q. Was it a demand from them to you to pay an installment on your contract? A. Yes sir, that is what it was. Q. What did you say to Steffner at that time? A. I asked him why that came to me. Q. What did he say? A. He said he didn't know. He said I will take it up by wire to-morrow morning and find out why it came back to you. He said he was in San Francisco and just got back a few days ago and this was all marked paid on the books. He said I seen it myself."

Concerning a conversation between defendant and Craddock, held on September 13th, the latter testified: "Q. What, if anything, did you say to Steffner at that time? A. I asked him why my contract didn't come. Q. What did he say? A. He said that he didn't know. He didn't know why it didn't come. He said I will wire to-morrow morning and find out. Q. Did Mr. Steffner say anything else at that time, if you remember; do you recall anything about his actions or manner? A. He kept stalling me off and acting as if he didn't know me."

In his cross-examination the witness testified: "Q. In answer to the question by the District Attorney I think his question was, what bank, and you said the Anglo-California Bank, referring to a time when you paid this money to Mr. Steffner. You don't know whether he mentioned the Anglo-California Bank at all at that time, do you? A. I know he mentioned he would send it to the bank and I would get the contract. I know that. Q. You wouldn't attempt to say those were his exact words, would you? A. That is what I understood him to say. Q. That is the way you remember it now? A. Yes. If I hadn't I sure wouldn't have given him the money. . . . Q. Did you ask Mr. Steffner in that conversation between you and him in the postoffice, and when you say it was about half an hour before you went

up to pay him, if it would be all right for you to pay the money to him? A. I sure did. Q. That is the reason you paid it to him? A. Certainly. Q. Because you believed that statement? A. I believed he would send it. He told me he would. Q. He didn't tell you at that time he would. A. He sure did. Q. He told you half an hour before you went up to the office? A. Yes sir. Q. And again after you got up to the office? A. Yes sir. Q. He told you that in front of the postoffice? A. Yes sir. Q. And half an hour later he told you that again? A. You bet you. . . . Q. Now, why didn't you tell at the preliminary examination that he told you while you were at the postoffice that if you gave him the money he would send it in? (An objection was here made to the question by the prosecution and overruled by the Court.) A. Well, you know you don't always, when you get up on the stand you don't always think of everything the first time. I am quite excitable myself, but that is right. To the best of my knowledge. Q. Which is right? That he did or did not tell you at the time in front of the postoffice? A. That he did tell me that he would send it in. Q. At the time you were in front of the postoffice? A. Yes sir. Q. And again repeated that statement half an hour later in the office? A. Yes sir, I wouldn't give him the money and think he would keep it for himself. I know what I gave it to him for. That was the understanding when I gave it to him. Q. That is what you now believe was the understanding? A. It was the understanding. Q. He gave you a receipt saying you had paid the money to him? A. Yes sir. Q. Did you understand that receipt meant what it said at the time? A. Yes sir. Q. It says you paid it to him? A. Yes sir. Q. It doesn't say anything else only that you paid it to him? A. No sir. Q. You understood that is what you were doing. What that receipt shows, paid it to him. A. Certainly, I understood I gave it to him to send in. Q. Why didn't you have that written on the receipt? A. Because I thought he was an honest man. Q. You thought you were paying it to him? A. Yes, I thought I was paying it to him. Q. You wasn't thinking anything about what he would do with it? A. I knew in my own mind he would send it in. Q. It says you paid it to him and you testified that he said it would be all right if you paid it to him? A. Yes sir. He

said it would be just as good as if I paid it to the bank. Just the same. Q. You thought he had authority from the bank to collect it? (Objection made by the prosecution and overruled.) A. No, I didn't think it."

The wife of the prosecuting witness also testified that defendant had stated he would send the money to the bank. It is admitted defendant retained the amount so paid him by Craddock, at least five hundred and fifty dollars of which was deposited to his own account on the seventh day of August, 1922, at which time an overdraft existed against him and in favor of a bank in Susanville where his account was kept. Notwithstanding this fact, the testimony shows that on August 24th, and after Craddock had received notice that the third installment due on his contract had not been paid, he sought defendant and inquired as to the reason, and was informed by him, in substance, that he did not know, but that he had just returned from San Francisco, and it was marked paid on the books, adding that he had seen the books so marked. Appellant calls attention to the fact that there was no proof that this latter statement was untrue, and that the uncontradictory documentary evidence showed that the bank had charged the Craddock account against defendant's withholding account. The so-called "withholding" account was not a credit in defendant's favor, and was not used for the purpose of liquidating the Craddock account. Referring to the withholding account the assistant manager of the contract department of the said trust company testified: "It is simply a name for the account representing transactions where an automobile contract is submitted to us with a greater balance than the value of the car. We don't discount the entire contract, but in order to take care of the matter we will remit a certain amount on the contract, placing the balance in the withholding account subject to the further discount, provided the purchaser makes the payments promptly and is going to terminate the contract."

He further explained that under certain forms of contracts there was also a withholding for security of one per cent of the balance which was placed in this account. On September 30, 1922, the withholding account represented approximately the sum of seven hundred dollars, which might eventually become a credit in defendant's favor,

under the contingencies as above explained. The trust company merely made an entry in the withholding account to prevent withdrawals therefrom. But it is further to be noted that the conversation referred to was held on August 24th.' Up until that time, and for some time thereafter, the Anglo-California Trust Company was not aware of the fact that defendant had been paid the amount owing under the contract, in fact he had made an installment payment earlier in the same month, and it was not until the 28th of September that he was informed by said company, by letter, to the effect that Craddock had written that defendant had been paid in full, adding, "If Mr. Craddock's statement is correct, and we have no reason for doubting it, you certainly must realize that full payment of the account must be made immediately by you." If we are correct in this, then the statement of defendant to Craddock with reference to having seen the books marked "paid" was false. Thus it appears that defendant not only concealed from Craddock the fact that he had not remitted the money paid to him, but concealed also from the trust company, whose agent he claimed to be, the fact that it had been so paid. It is true, as stated by appellant, that Craddock did not testify that it was understood or agreed that defendant should act as his "trustee" or "agent" in receiving and transmitting the money. We do not, however, view this as indicative of the fact that such an understanding was not had. Laymen, in transacting business, do not ordinarily resort to terms used by the legal profession. To determine whether there was such an understanding or agreement between Craddock and the defendant recourse must be had to the entire transaction. Craddock stated, in answer to a question asked by the defense, that he did not think defendant had the authority from the bank to collect the sum so paid and which was evidenced by the receipt above set forth. Concerning the giving of the receipt he stated, in effect, that at the time it was signed defendant said the money would be sent to the trust company and that he would receive his contract. While the receipt is not signed by the defendant as agent for Craddock, it is also to be noted that it is not signed in the name of the trust company, by defendant, purporting to be acting for it, nor did the defendant claim to have imparted this information

to the complaining witness. That he had made the contract with defendant could not be taken as knowledge on Craddock's part of any authorization of defendant to collect. There is no question of ostensible agency so far as Craddock is concerned. "The application of the rule of ostensible agency or authority depends primarily upon the acts or conduct or words of the principal and not upon the acts or conduct or words of the agent." (*Wiley B. Allen Company, etc., v. Thama M. Wood,* 32 Cal. App. 76, 84 [162 Pac. 121, 124].) It is not claimed Craddock had notice from the trust company of any authority on defendant's part to collect the installments under the contract, in fact his payments had been made, in accordance with the policy of the trust company, direct to it. The contract under consideration also contained a provision to the effect that, in case of assignment thereof, all payments thereunder by the purchaser "shall be paid to such assignee without recoupment, set-off, or counterclaim of any sort whatsoever." Thus there appears from the evidence to have been no source of information from which it can be reasonably said that Craddock had knowledge of any such claim of agency on defendant's part. We are not permitted, of course, to indulge in the supposition that he surmised such to be the fact. Considering these matters, our view is that the verdict of the jury was amply supported by the evidence.

[4] Appellant earnestly insists that although the Anglo-California Trust Company's policy and desire was to have purchasers remit direct to it, nevertheless there was proof to the effect that it did permit appellant to make collections on its behalf; that appellant was its agent for that purpose, and, if there was a conversion, it was not of the money of Craddock. *People* v. *Van Ewan,* 111 Cal. 144 [43 Pac. 520], is cited as sustaining this view. It is also contended "If the rediscounting of the contract is to be considered, as it appears to have been regarded at the trial, to be an absolute sale and transfer of the contract and the car therein described to the bank, then there was actually transferred only a partial interest, although the greater interest therein to the bank, because, as shown by the evidence generally, the bank was entitled only to the amount of the proceeds and returns of the contract sufficient to reimburse itself with its interest and discount. Any overplus belonged to

appellant. This constituted the bank and the appellant joint obligees and payment could have been made to either by Craddock and his obligation discharged.'' Hence, ''Craddock became divested of his title to the money when he paid it to appellant, the bank's joint obligee.'' On the other hand, it is asserted that if the transaction be treated as a loan to appellant and a pledge of the contract by him to the bank, then appellant as pledgor had a right to make collection for the benefit of the pledgee and himself.

These various contentions are untenable for several reasons. Assuming there was a conflict in the evidence as to the capacity in which defendant received the money, the jury has determined the question by its verdict adversely to these contentions. (*People* v. *Treadwell,* 69 Cal. 226, 230 [10 Pac. 502, 507].) If the agreement and understanding between Craddock and defendant was to the effect that the money was entrusted to defendant as the agent and trustee of Craddock, defendant is now estopped from denying he was such, or from claiming to have acted in any other capacity. (*People* v. *Treadwell, supra; People* v. *Robertson,* 6 Cal. App. 514 [92 Pac. 498].)

In the former case it is said:

''The evidence is overwhelming that Quinn, when he paid his moneys upon the note, acted with the defendant as the attorney and agent of Haneke for the purpose of receiving and forwarding them to Haneke. He so understood it from Haneke and the defendant himself. He knew nothing of the endorsement of the note to Mrs. Wise, for the defendant had not informed him. The defendant was therefore, when he received the money from Quinn, in fact the agent, or acting as the agent, of Haneke, and he is estopped in law from denying that he was the agent.''

[5] Appellant strongly urges that the evidence clearly established the fact that he was the agent of the trust company in the collection of the money from Craddock. It is claimed this agency arose through a course of conduct and dealing between the parties. It is true that he had assigned many contracts similar to the one under consideration to the trust company and the dealings between the parties in relation thereto had extended over a considerable period. The policy of the. company required purchasers under these contracts to make payments direct to it. As

defendant was a guarantor under the terms of the assignments of the contracts, he was notified from time to time of the delinquency of purchasers, and in such communications was directed to bring the accounts up to date or to see the purchasers and collect the back installments, or some other similar direction was given. Whatever authority may have been contained in these letters was special, not general. In the instant case the amounts payable under the contract had not become due. No similar transaction have we found in the record. Possibly there may have been instances where, by special direction, defendant had been called upon to make some collection on behalf of the trust company, but of course these cases cannot be used as a means of establishing general agency to make collections under all circumstances or in all cases. Defendant did testify that it was his custom to collect money due on contracts and to transmit the same to the company; that sometimes he deposited the money and remitted his check. Apparently these were delinquent collections. We believe these facts are not sufficient to bring the defendant within the provisions of section 2316 of the Civil Code. That section reads: ''Actual authority is such as a principal intentionally confers upon the agent, or intentionally or by want of ordinary care, allows the agent to believe himself to possess.'' But if we assume the defendant did believe himself possessed of authority to act as agent for said company in the Craddock transaction, he did not communicate such fact to the latter, nor was Craddock aware of that fact from any other source of information, and the defendant is now estopped from availing himself of this character of defense. The facts in the Van Ewan case, *supra*, are entirely dissimilar to those in the present case. The points which we have discussed were not there referred to.

[6] The court admitted in evidence, over the objection of defendant, a copy of a letter from the Anglo-California Trust Company addressed to him, dated October 23, 1922. The body of the letter is as follows:

''Notwithstanding the fact that you have heretofore denied that you received full payment on the E. J. Craddock account, we are today in receipt of a copy of what purports to be your receipt No. 90, in the sum of $684.74, under date of August 10th. The above mentioned copy

has been forwarded to us by Mr. George E. Gardner, Assistant District Attorney of Butte County, and we have no reason to doubt that it is an authentic copy. Agreeably to your request of recent date, we forwarded our collection last Friday to the Bank of Lassen County, to cover the balance due us on the Craddock account, and we trust that this draft will be promptly honored upon presentation.''

Respondent does not attempt to justify the relevancy of the first portion of the letter, but does contend that the objection made that it was ''incompetent, irrelevant and immaterial'' was addressed to the letter as a whole, and as the latter part was material, the court did not, therefore, err in its admission. Appellant does not dispute the proposition of law thus advanced, but denies the materiality of the entire letter. Appellant asserts that as it contained the only reference to any denial of the payment made by Craddock to defendant, proof of that fact would be fatal to the defense that defendant had collected it in the regular course of business and expected to have the same deducted from his funds in the hands of the trust company. Under the theory suggested by appellant a number of letters from said trust company to him were introduced in an endeavor to show, as we gather therefrom, an implied authority on his part to collect on its behalf from purchasers under contracts assigned to said company, and also to show that it had been the practice of said company to deduct from sums or credits in its hands belonging to defendant the various amounts thus collected by him, and this course of procedure had been relied upon and followed by defendant in the instant case. The latter portion of the letter was a reply to a telegram from defendant wherein he requested that the Craddock contract be sent to the Bank of Lassen with a sight draft attached. The telegram and the reply thereto negative the theory that either he or the trust company recognized that the Craddock account had been paid, or that the amount thereof had been deducted or withheld from any funds belonging to defendant, or that defendant was then relying on such a custom or practice. The letter was one of a number between the parties throwing light upon those introduced by the defense, and was, therefore, admissible. The evidence does not disclose a defense along the lines suggested. The defense introduced a letter dated

September 28, 1922 (an excerpt from which we have heretofore inserted and which is also included in the portion here referred to), from the Ango-California Trust Company to defendant containing, among other things, the following:

"It will no doubt interest you to know that we have received a communication from Mr. E. J. Craddock, indicating that on September 5th he paid to you the total balance due on the account, whereas you but sent to us on September 15th the August 29th installment. If Mr. Craddock's statement is correct, and we have no reason for doubting it, you most certainly must realize that full payment of the account must be made immediately by you. For your information I am enclosing herewith a copy of the letter received from Mr. Craddock together with my reply." (The money was received by defendant on August 5th, and the error in the letter is explained in the testimony of one of the witnesses.)

It was the duty of the defendant, if it be assumed for the moment he was the agent of the trust company in making the collection from Craddock, to notify his principal and to turn the money so collected over to it within a reasonable time. Fraudulently secreting property with the fraudulent intent to appropriate it is embezzlement. (Pen. Code, sec. 506.) The money so collected was never turned over either to Craddock or to the said trust company, but was appropriated to defendant's own use and purpose. The facts fail to substantiate the suggested defense.

[7] On redirect examination the witness Lockhart testified, in answer to questions by the prosecution:

"Q. You testified on cross-examination, I think both yesterday and today, that Mr. Steffner had enough money on deposit, or enough credits with the Anglo-California Trust Company to take up the entire Craddock contract. Is that correct? On September 30th? A. Yes, sir. Q. You also testified that you didn't take up the Craddock contract by charging Mr. Steffner's account with the amount? A. Yes sir. Q. Why was that not done? By Mr. Holl: Object to that as incompetent, irrelevant and immaterial. It is a self-serving declaration calling for the conclusion of the witness and not redirect. By the Court: To what time does this relate? By Mr. Hardy: September 30th. The same date that was mentioned in the question of counsel for de-

fendant. By the Court: I will overrule the objection. A. There was only one installment due on September 30th. We had no right to deduct the entire amount of the contract.''

Thereupon a motion was made to strike out the latter part of the answer as calling for the conclusion of the witness and contradictory of the terms of the contract.

The part objected to does seem to be in the nature of a conclusion, but the reasonable construction is, to our minds, that it was an attempt by the witness to state or assign the reason why the trust company had not taken up the Craddock account in the manner suggested, rather than an attempt to state the terms of the contract. Substantially the same matter was brought out by the defense on cross-examination of the same witness.

[8] Complaint is made of the ruling of the court permitting the witness Craddock to testify, over the objection of the defense, to the payment of a draft drawn by the Anglo-California Trust Company against him for the sum of $629 (Rep. trans., p. 28). This matter was fully covered, however, without objection of any kind, by the testimony of the witness Lockhart. (Trans., p. 61.) It is unnecessary, therefore, to determine its admissibility, as no prejudice could have resulted from its reception.

[9] The court gave of its own motion the following instruction: ''The court instructs you that if any person assumes to act as the agent of another, and in such assumed capacity he is intrusted with, and received into his care and custody, the property of another, for the use of such other person, and thereafter fraudulently and feloniously appropriates and converts such property to his own use, or to any use or purpose not in the due and lawful execution of his trust, he is guilty of embezzlement.''

Appellant states that this was inapplicable and confusing, in that it may have misled the jury into the belief that he might have been guilty because of his collecting from Craddock while pretending to be an agent of the Anglo-California Trust Company. It is also stated that there was no evidence that defendant ever assumed to act as the agent of Craddock, hence the instruction was inapplicable. We have previously set forth excerpts from the evidence sufficient to show that the jury was justified in its implied finding that defendant was entrusted with the money of Craddock. We

do not think the instruction was confusing, for the reason that all the instructions must be read together. One of the instructions proposed by defendant, and given by the court, was as follows: "Steffner, defendant, is charged with embezzling certain property from Craddock. He is not being tried for embezzling anything from the Anglo-California Trust Company. So unless you are convinced beyond a reasonable doubt and to a moral certainty that he has embezzled from Craddock, you must find him not guilty." The court also in its charge referred to the information which had theretofore been read to the jury and instructed the jury that the plea of not guilty put in issue every material allegation of the information, and it therefore became necessary for the people to establish all such allegations to a moral certainty and beyond a reasonable doubt. The information leaves no doubt as to the nature of the charge. Reading these instructions together, it is clear the jury could not have been misled.

[10] The following proposed instruction was offered by defendant and .refused: "A defendant who has converted money to his own use, believing he had a right to do so, is not guilty of embezzlement, even though he is mistaken, and did not have the right to do so." The court gave instead thereof the following: "You are instructed that if, upon consideration of the whole case, *you are satisfied to a moral certainty and beyond all reasonable doubt* that the appropriation of the money charged in the information to have been embezzled by the defendant was made by the defendant upon the belief, honestly entertained by him, that he had a lawful right to appropriate the money, the act was not criminal."

It is claimed that the refusal to give the one and the giving of the other constituted prejudicial error, as the defendant relied upon the defense outlined in section 511 of the Penal Code. The objection to the instruction given is addressed to the portion italicized. Section 511 of the Penal Code reads: "Upon any indictment for embezzlement it is a sufficient defense that the property was appropriated openly and avowedly, and under a claim of title preferred in good faith, even though such claim is untenable. But this provision does not excuse the unlawful retention of the

property of another to offset or pay demands held against him.''

The court was justified in its refusal to give the proposed instruction for the reason that, to constitute a defense under said section the property must be appropriated ''openly and avowedly and under a claim of title preferred in good faith.'' This provision was not covered by the instruction proposed to the effect that a defendant is not guilty of embezzlement where he has converted money to his own use ''believing he has a right to do so.'' Defendant was not entitled, however, to any instruction embracing the principles of law covered by said section of the Penal Code, and, therefore, the refusal of the one and the giving of the other did not operate to his prejudice.

In the case of *People* v. *Bracklis,* 54 Cal. App. 40 [200 Pac. 1062], an instruction following the language of the first provision of said section 511 of the Penal Code was offered and refused. As to this the court says: ''The defendant did not claim the right to appropriate the property to his own use. If his testimony be true and the inference of his counsel therefrom correct, then appellant was a bailee for Gale Brothers, with authority to sell and under obligation to account for the proceeds. Embezzlement of the proceeds of such sale might constitute a different crime from that charged, but not an appropriation under a claim of title preferred in good faith. While the proposed instruction states a correct proposition of law, it is not applicable to the evidence.''

In the case at bar the prosecution claimed the money was entrusted to defendant for the use and benefit of Craddock, while the defense maintained it was paid to defendant as the agent for the Anglo-California Trust Company. In neither case did he have the right to appropriate the property to his own use; therefore, the instruction given by the Court to the effect that if the jury found ''to a moral certainty and beyond all reasonable doubt'' that if defendant appropriated the money upon the belief honestly entertained by him that he had a lawful right to do so, the act was not criminal, was not prejudicial to the defendant. That he received the property in trust for someone is admitted; that it was never paid over is not denied. The claim now made that it was appropriated openly and avowedly and

in good faith is not supported by the evidence, and under the facts of the case runs counter to the provisions of sections 511 and 512 of the Penal Code, the former section providing as above set forth and the latter section that intent to restore property embezzled is no defense or ground for mitigation of punishment if not restored before the information is laid before a magistrate or an indictment found by the grand jury, charging the commission of the offense.

[11]   It is claimed the court erred in refusing the following instruction proposed by defendant: "The statutory crime of embezzlement is not a substitute for imprisonment for debt and cannot be used to punish a party for failure to comply with ordinary obligations to pay money."

As previously stated, the money was either entrusted to defendant for Craddock, or, under defendant's theory, was paid to him as agent for the Anglo-California Trust Company. Under neither theory was the proposed instruction applicable. It is not explicit, nor can it be told therefrom to what portion of the evidence it was intended to apply. We find no evidence justifying the giving of the proposed instruction in its present form.

A number of other instructions proposed by defendant covering various features of the crime of embezzlement were refused, and the court's refusal is now assigned as error. We are satisfied that the instructions given by the court substantially covered the principles of law contained in those so proposed. It was not error, therefore, to refuse to further instruct on the subject.

Reading the record as a whole, no reasonable doubt can be entertained as to the guilt of the defendant; in fact, there seems to be no substantial evidence to the contrary.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 26, 1924.

All the Justices concurred.